In re ENVISIONET COMPUTER
SERVICES, INC.

Village Ventures, Inc.,
et al., Appellants,

v.

The Official Committee of Unsecured
Creditors, Appellee.

Bankruptcy No. 01–20952–JBH.
CIV. No. 01–CV–294–P–C.

United States District Court,
D. Maine.

April 8, 2002.

Roger Clement, Esq., Verrill & Dana,
Portland, ME, for appellants.

George J. Marcus, Marcus, Clegg &
Mistretta, P.A., Michael A. Fagone, Esq.,
Bernstein, Shur, Sawyer, & Nelson, Port-
land, ME, for appellees.

**MEMORANDUM OF DECISION AND ORDER ON APPEAL FROM BANKRUPTCY COURT'S ORDER DENYING APPELLANTS' MOTION TO AMEND BANKRUPTCY COURT'S ORDER ON DEBTOR'S MOTION TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES**

GENE CARTER, District Judge.

Appellants Village Ventures, Inc. ("VVI"), TSG Equity Fund, LP ("TSG"), and ECS Funding, LLC ("ECS") (collectively "Appellants") have elected, pursuant to Fed. R. Bankr.P. 8001(e) and 28 U.S.C. § 158(c)(1), for this Court to hear their appeal. On August 28, 2001, the United States Bankruptcy Court for the District of Maine, pursuant to 28 U.S.C. § 157(b)(1) and standing order of reference dated July 11, 1984, issued a final order regarding the sale of substantially all of EnvisioNet Computer Services, Inc.'s assets. Appellants seek review of the bankruptcy court's findings that: (1) Appellants consented to the designation of the bid by Microdyne Outsourcing, Inc. ("Microdyne") as "Back–Up Bid," and (2) Appellants failed timely to object to the sale of substantially all of the Debtor's assets free and clear to Microdyne. Rather than contest the sale itself to Microdyne, Appellants request amendment of the bankruptcy court's August 28, 2001, to state that the sale to Microdyne was approved "over their objections" at that hearing. Appellee, the Official Committee of Unsecured Creditors (the "Committee") opposes the amendment.

**Standard of Review**

The District Court applies a "clearly erroneous" standard of review to a bankruptcy court's factual findings and *de novo* review to its conclusions of law. *See* Fed. R. Bankr.P. 8013; *Palmacci v. Umpi-*

*errez*, 121 F.3d 781, 785 (1st Cir.1997). "A court reviewing a decision of the bankruptcy court may not set aside findings of fact unless they are clearly erroneous, giving 'due regard ... to the opportunity of the bankruptcy court to judge the credibility of the witnesses.'" *Id.* (quoting Rule 8013). "The bankruptcy court's legal conclusions drawn from the facts so found, are reviewed de novo," and the district court and the court of appeals apply the same standard of review. *Id.* The bankruptcy court's interpretation of statutes is a question of law, while application of a statute to the facts "poses a mixed question of law and fact, subject to the clearly erroneous standard, unless the bankruptcy court's analysis was infected by legal error." *In re Indian Motocycle Co., Inc.*, 261 B.R. 800, 805 (1st Cir. BAP 2001) (internal quotations omitted).

**Facts**

EnvisioNet Computer Services, Inc. ("EnvisioNet" and/or "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 14, 2001 (the "petition") in the United States Bankruptcy Court for the District of Maine (Chapter 11 Case No. 01–20952). Prior to the petition date, Appellants VVI and TSG made unsecured loans to the Debtor. The bankruptcy court authorized post-petition financing to the Debtor by a group of lenders, collectively referred to, in final debtor-in-possession financing orders, as the "DIP Junior Lenders." The DIP Junior Lenders included Appellants and a group of individual lenders referred to as the "Tureen Group." The DIP Junior Lenders provided $563,000 in post-petition financing to the Debtor. VVI and TSG also provided letters of credit ("LOCs") payable to KeyBank to secure some of the Debtor's obligations to KeyBank National Association ("KeyBank"), the Debtor's primary secured lender.[1]

---

1. The provision of the post-petition financing and the letters of credit, Appellants argue,

On August 6, 2001, the bankruptcy court entered an order approving the sale of substantially all of Debtor's assets and setting the bid procedure (hereinafter "Sale Order"). The Notice accompanying the bankruptcy court's Sale Order required, *inter alia*, that objections to any sale be filed in writing with the bankruptcy court and simultaneously served upon counsel for the Debtor on or prior to 4:30 p.m. on August 15, 2001. *See* August 6, 2001, Sale Order, Ex. A: Notice of Intent to Sell (Bankr.Docket No. 85) at 4. The court-approved Notice stated:

> Following the conclusion of the bidding, the Debtor shall select and present to the Court the bid the debtor considers to be the highest and best bid, and all other parties shall have the right to object to such selection and to recommend another bid as the highest and best bid[.] The Court shall then determine the winning bid (the "Winning Bid").

. . .

allegedly permitted the DIP Junior Lenders to step into the shoes of KeyBank as a first priority secured creditor. Appellees dispute that Appellants "step[ped] into KeyBank's shoes" with respect to KeyBank's claims against the Debtor. Appellees' Brief (Docket No. 5) at 2 n. 1.

2. At the hearing on August 20, 2001, the following parties expressed on the record their agreement to the sale of EnvisioNet, initially to Microdyne: the Committee by Attorney Keach, TSG by Attorney Clement, Orono by Attorney Mannheimer, KeyBank by Attorney Hirshon, Coastal by Attorney Segal, FAME by Attorney Roney. Tr. at 252–55. After the final bids had come in, some of the creditors expressed a preference for the Alorica bid. At the close of bidding, *i.e.*, after both parties had submitted their best and final offers, the transcript of the hearing indicates that the following dialogue transpired:

> JUDGE HAINES: ... I take it that—well, saving out the DIP lenders, that the secured creditors are consenting to either of these deals with the rights as reserved and articu-

Closing on the Winning Bid shall occur not later than August 27, 2001, unless the Debtor agrees to a different date, or the Court orders otherwise.... The Debtor may select, subject to approval of the Court, a second most favorable bid for the purchase of the Debtor's Assets (the "Back–Up Bid"), which Back–Up Bid shall become the successful bid in the event that the maker of the Winning Bid fails to close within the time permitted herein. In such event, the maker of the Back–Up Bid shall close on the purchase of the Assets of the Debtor within five (5) days after the date scheduled for closing with [sic] on the Winning Bid., unless the Debtor agrees to a different date, or the Court orders otherwise.

*Id.* at 6–7. On August 20, 2001, the bankruptcy court convened a hearing for presentation and consideration of bids. At that hearing, Alorica's bid was designated as the Winning Bid provided the deal closed by August 27, 2001, and Microdyne's bid was designated as the Back–Up Bid.[2] Tr. at 267–69.

lated on the record earlier. If that's not the case, I need to hear from somebody.... All right, and let me hear from the Creditors Committee.

> MR. KEACH (Committee of Unsecured Creditors): Your Honor, we are essentially our deal has been cut with respect to the sharing of proceeds. So we are in a position, frankly, of favoring whichever deal is favored by the DIP lenders and which lends the most certainty in their [sic] respect and therefore runs the most certainty in the distribution to us.

> . . .

> JUDGE HAINES: Mr. Manheimer, I take it that Orono consents to either of these offers with the caveat that the five-year note under the Alorica deal would not necessarily equal satisfaction to [the] Orono claim.

> MR. MANHEIMER: Correct. Thanks, Your Honor.

> JUDGE HAINES: Mr. Clement.

> MR. CLEMENT: Thank you, Your Honor. We think that the offers are very close. It's pretty difficult to determine which one is better—maybe if we had more time—but

On August 28, 2001, Microdyne filed two motions: (1) Motion to Expedite and (2) Motion to Confirm Sale of Assets by Microdyne Outsourcing Incorporated Mooting Motion to Amend Order by Microdyne Outsourcing Incorporated. The Court held a hearing on Microdyne's motions on August 28, 2001. At the hearing, Appellants stated objections to what they termed the "substitution" of Microdyne as the "Winning Bid." The bankruptcy court ruled that objections to approving sale of the estate to Microdyne, which Appellants attempted to raise at the August 28, 2001, hearing had not been preserved and were, therefore, untimely because they had not raised legally cognizable objections under 11 U.S.C. § 363 at the August 20, 2001, hearing, when Microdyne was designated as the Back–Up Bid. The bankruptcy court further found that the Debtor had never agreed to an extension of the Alorica closing date and that none was granted by the bankruptcy court. The bankruptcy court expressly found: (1) that no objections pursuant to 11 U.S.C. § 363(f)(3) or (5) had been made to either the Alorica bid or the Microdyne bid at the August 20th hearing, and (2) that at the close of the August 20th hearing, all of the parties agreed that Alorica would be designated as the Winning Bid and Microdyne would be designated as the Back–Up Bid.[3] The

we were going to say that we think that our preference would be the Microdyne offer.

JUDGE HAINES: You wouldn't agree to the $375,000 being allocated to the estate under the Alorica offer, which is really the turning point for your group in terms of—between the two deals.

MR. CLEMENT: Yeah, I guess what we're saying is our position is we do not want to move forward with that SPM carve-out to us over the objection of debtor's counsel for a whole host of factors. [Tr. at 263–64.]

JUDGE HAINES: All right. First of all, either of these deals is now subject, legally, appropriate for authorization. It's a matter of choosing between the two and in doing that particularly in the course of a liquidating Chapter 11 and this is, notwithstanding the fact that it is not a liquidating plan, this is a sale of substantially all of the debtor's assets outside of the plan under Section 363. The secured creditors have either consented or will be paid fully... [Tr. at 266–267] [N]otwithstanding the debtor's lukewarm attitude toward the Alorica deal, ... I'm listening to the DIP lenders, ... and I'm listening to the unsecured creditors who are getting the chance of a better pay-out and a little less risk long term and I will approve the Alorica deal as opposed to the Microdyne deal.... There are also pressing business reasons for moving forward on a somewhat accelerated basis on the sale process itself. [Tr. at 267–68.]
...

MR. CALLAGHAN: Thank you, Your Honor. Question, as Mr. Keach provided the back up bid. Does the Court contemplate entering a separate order if the winning bidder fails for whatever reason to perform because we attached a proposed order to our bid because we had some specific transaction issues that should be included in the order. I don't know who is drafting the order, but if you want to do it under one order, I request that the parties include us in reviewing that.

JUDGE HAINES: I think that's appropriate. Mr. Keach.

MR. KEACH: Your Honor, it seems also appropriate that if for any reason the winning bid does not close, it seems to me we could submit Microdyne's substitute order or supplemental order at that point in time.

JUDGE HAINES: Work it in that you are certified as backup under the bidding procedures and that those terms will be in place should this fail to close.

MR. KEACH: Thank you, Your Honor.

JUDGE HAINES: Is there anything else we can do today or tonight in this case? Well, thank you all very much for the hard work that has gone in to it [to]day. We'll be in recess.

Tr. at 269.

3. During the August 28th hearing, some parties balked at the substitution of the BackUp–Bid into the Sale Order, although admitting that they had no real cognizable legal objections. Some of the parties attempted to convince Judge Haines that he should extend the deadline for approving the Alorica deal, which they then preferred:

bankruptcy court issued its August 28, 2001, order approving the sale to Microdyne reflecting that the parties' had consented under section 363 to the sale of the estate. On August 30, 2001, the deal closed, wherein substantially all of Debtor's assets were sold to Microdyne. Tr. at 180. On October 3, 2001, the bankruptcy court held a hearing on Appellants' motion to amend its order of August 28, 2001, and the Bankruptcy Court denied the motion.[4] Appellants' appeal of this denial is now before the Court.

### Discussion

■ After reviewing the transcripts of the hearings before the bankruptcy court held on August 20, 2001, August 28, 2001, and October 3, 2001, the Court **CONCLUDES** that the bankruptcy court was not clearly erroneous in finding that: (1) Microdyne was certified as the Back–Up Bid by the bankruptcy court in its order of August 20, 2001, and (2) no objections under 11 U.S.C. § 363 were raised to this certification at that hearing. The Court conducts a *de novo* review of the bankrupt-

MR. CLEMENT: Your Honor, the letter—I represent the letter of credit party, sir. Two of them, anyway. And we are behind KeyBank, the secured creditors, the secured creditors whose ox would be gored by a reduction in the purchase price. The letter of credit parties or lenders have negotiated—had negotiated a deal with the creditors committee to allow an SPM kind of arrangement to pay some money to the creditors committee so that this deal would be palatable to the committee as well. The—to put it simply, my clients still support the Alorica bid. [Tr. at 22.]

MR. MANHEIMER: ... For the Town of Orono and the OEDC, do we have a legally cognizable objection to a sale to Microdyne? Perhaps not in the sense that I think I agree with Mr. Keach, unfortunately, that 363(f) objections would have been dealt with at the previous hearing. At the same time, I think that I would like to reiterate the support of the Town of Orono and the OEDC for the Alorica bid.... Tr. at 135.... I tried to start my presentation by saying that I don't believe—and maybe I should just sit down, because as far as having a cognizable legal objection to the Microdyne sale if Alorica wasn't in the room anymore, everybody agreed that it was Microdyne or nothing, sure, I'd prefer Microdyne over nothing. Tr. at 139.

...

JUDGE HAINES: ... [W]e did certify—and I believe the word on the record was "certify"—Microdyne as the backup bidder at the close of the bidding session, and as of that date, it was entitled to the status of backup bidder under the sale procedures, and that was without any [11 U.S.C. § ] 363

objections. Those have been resolved previously.
Tr. at 148.

4. At the October 3, 2001, hearing on Appellant's Motion to Amend the August 28, 2001 Order, the parties, including Appellants, admitted that they had not objected to designating Mircrodyne as the Back–Up Bid:

THE COURT: ...[A]t the time we had the auction, there was no objection based on Microdyne's request which was brought forward by Mr. Callaghan right at the end of the hearing, but after everybody was in the room for the entire day and fully informed of what was going on, and the Alorica bid was designated as the winning bid. He got up and said, "And pursuant to the sale procedures," or words to that effect, "may we—may Microdyne be designated as the backup bid?" There were no objections made. [Microdyne's bid] was designated as the backup bid without objection. We then had a hearing a couple of weeks ago about actually going forward to close the sale of Microdyne and getting the order to that effect. There were a number of objections raised at that time, and the record speaks for itself on that, and I ruled that some of those objections were not in order because there had been no objection to designation of Microdyne as the backup bid. [Tr. 163–64.]

MR. CLEMENT: ... I objected on the 28th. There's no question that my clients did not object on the 20th to the designation of Microdyne as the backup bidder. However, we did object vehemently to the selection of Microdyne as the winner bidder, i.e., the replacement of Alorica with Microdyne. [Tr. at 165.]

cy court's legal conclusion that because objections pursuant to section 363 of the Bankruptcy Code were not raised at the August 20th hearing, they were untimely made on August 28, 2001.

First the Court notes, as a matter of law, that the Sale Order was properly issued by the bankruptcy court pursuant to 11 U.S.C. § 363. "Even if a lien creditor is not fully satisfied from the proceeds of a sale, and even if the creditor objects to ·the sale, a court may still authorize the sale if the creditor 'could be compelled, in a legal or equitable proceeding, to accept a money satisfaction' of its claim." *In re Perroncello,* 170 B.R. 189, 191 (Bankr. D.Mass.1994) (quoting 11 U.S.C. § 363(f)(5)). A party's failure to timely raise an objection under section 363 of the Bankruptcy Code in accordance with a court order requiring objections to be made by a certain date results in a waiver of the objection. *See, e.g., In re Table Talk, Inc.,* 53 B.R. 937, 941–42 (Bankr. D.Mass.1985) (party's section 363 objection to notice of sale was not timely filed in accordance with court order requiring objection to be filed by certain date); *Cedar Island Builders, Inc. v. South County Sand & Gravel,* 151 B.R. 298 (D.R.I.1993) (discussing importance of notice so that objections may be raised, and holding that failure to comply with notice requirements warranted vacating the order confirming sale); *see also, In re Paul,* 67 B.R. 342 (Bankr.D.Mass.1986) (failure to object under 11 U.S.C. § 543(b) to motion to disburse funds to trustee after foreclosure sale resulted in waiver of claim of title to the funds). The bankruptcy court-authorized Notice of August 6, 2001, provided in part that objections to the proposed sale should be made in writing to the bankrupt-

cy court by August 15, 2001. *See* August 6, 2001 Sale Order at 4. Although objections would have been timely until the final bids were submitted to the bankruptcy court at the August 20, 2001, hearing, there is no evidence in this record that Appellants objected at that time or that they filed written objections to the sale of EnvisioNet at any time. The parties participated in negotiations and hearings leading up to the issuance of the August 20th order, and they were fully aware of the terms of the bid and sale procedures approved by the bankruptcy court. The Court construes their failure to object at that time as a waiver of their right to do so.

After reviewing the transcripts and the record before this Court, as well as the relevant caselaw, the Court concludes that Appellants waived objections pursuant to section 363 by failing to raise them at the hearing on August 20, 2001, when Microdyne's bid was designated, pursuant to the Sale Order, as Back–Up Bid. The Court **CONCLUDES** that the bankruptcy court correctly ruled that Appellants' section 363 objections were not preserved and that they could not properly be brought at the August 28th hearing. The Court will, therefore, **AFFIRM** the bankruptcy court's denial of Appellants' Motion to Amend.[5]

### Conclusion

It is **ORDERED** that Appellants' Motion to Amend the Bankruptcy Court's August 28, 2001, order to reflect that the substitution of Microdyne as the Winning Bid occurred over their objection will be, and it is hereby, **DENIED**. The Court **ORDERS** that the bankruptcy court's de-

---

**5.** The Court agrees with the bankruptcy court's reasoning in its' denial of the Motion to Amend, wherein the court stated that the transcript of the hearing adequately reflects the objections Appellants attempted to raise, albeit in an untimely fashion, and the bankruptcy court's order accurately reflects the parties' positions.

nial of Appellants' Motion to Amend be, and it hereby is, **AFFIRMED**.