ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                              )     BAP No.   CC-14-1563-KuPeTa
                                    )
DORON EZRA; NAVA TOMER EZRA,        )     Bk. No.   1:11-12168-MT
                                    )
            Debtors.                )     Adv. No.  1:12-01001-MT
_____ )
                                    )
SHOSHANA EZRA,                      )
                                    )
            Appellant,              )
                                    )
v.                                  )     **OPINION**
                                    )
DAVID SEROR, Chapter 7              )
Trustee,                            )
                                    )
            Appellee.               )
_____ )


Argued and Submitted on July 23, 2015
at Pasadena, California

Filed – September 22, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen A. Tighe, Bankruptcy Judge, Presiding

_____

Appearances:     Shalem Shem-Tov of Netzah & Shem-Tov, Inc. argued
                 for appellant Shoshana Ezra; Richard D. Burstein
                 of Ezra Brutzkus Gubner LLP argued for appellee
                 David Seror, chapter 7 trustee.

_____


Before:  KURTZ, PERRIS[*] and TAYLOR, Bankruptcy Judges.

_____

[*]  Hon. Elizabeth L. Perris, United States Bankruptcy Judge
for the District of Oregon, sitting by designation.

KURTZ, Bankruptcy Judge:

**INTRODUCTION**

Shoshana Ezra appeals from the bankruptcy court's judgment avoiding as fraudulent transfers two deeds of trust the debtors Doron Ezra and Nava Tomer-Ezra executed in her favor. Shoshana[1] contends that at least some of the avoidance claims brought against her by the chapter 7[2] trustee David Seror were time barred, that there was insufficient evidence the debtors made the transfers with the intent to hinder, delay or defraud their creditors, and that there was no evidence of the debtors' insolvency.

We disagree with Shoshana's position on intent. As for the specific limitations defense she discusses in her opening appeal brief, it differs from the statute of repose issue she raised in the bankruptcy court. We decline to address the limitations defense on appeal because it was not sufficiently raised in the bankruptcy court for the bankruptcy court to decide it. As for her statute of repose issue, she did not raise it in her opening appeal brief; she only raised it in her appellate reply brief. This is improper, and we similarly decline to address it. On these grounds, we AFFIRM.

---

[1] For the sake of clarity, we refer to the Ezras by their first names. No disrespect is intended.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

**FACTS**

Doron and Nava purchased their residence in 1996. Since then, the residence has been the subject of several transactions involving various Ezra family members. On October 17, 2001, Doron quitclaimed his interest in the residence to Nava in her name alone, but a week later Nava executed a new quitclaim deed transferring title to the residence back to her and Doron as husband and wife. In January 2010, Doron once again quitclaimed his interest to Nava in her name alone. At the time of their joint bankruptcy filing in February 2011, Nava still held title to the residence in her name alone.

In addition to the title transfers, four deeds of trust were of record at the time of the commencement of the debtors' bankruptcy case. Of these four, the first and third deeds of trust were held by banks and were not contested by Seror in the debtors' bankruptcy case. The other two deeds of trust of record were both held by Shoshana and are described as follows:

1. A second deed of trust recorded in April 2004 in favor of Doron's mother Shoshana, as beneficiary, purportedly securing a debt in the amount of $500,000; and

2. A fourth deed of trust recorded in June 2009 in favor of Shoshana, as beneficiary, purportedly securing a debt in the amount of $500,000.

In January 2012, Seror filed his complaint seeking to avoid as fraudulent transfers the 2004 and 2009 deeds of trust in favor of Shoshana. He also sought to recover the transfers for the benefit of the estate pursuant to § 550(a). In relevant part, Seror alleged that the debtors did not receive reasonably

3

equivalent value in exchange for the 2009 deed of trust and that the debtors were insolvent at the time or that the 2009 deed of trust rendered them insolvent. Seror further alleged that, at the time both transfers were made, the debtors faced "demands and/or potential or pending litigation" and that the debtors made the transfers for the purpose of shielding from creditors any equity in their residence. Based on these and other allegations, Seror asserted that he was entitled to avoid the 2009 deed of trust as an actual and constructive fraudulent transfer either under § 548(a)(1)(A) and (B) or under § 544(b) and Cal. Civ. Code §§ 3439.04(a) and 3439.05. Seror further claimed that he was entitled to avoid the 2004 deed of trust as an actual fraudulent transfer under § 544(b) and Cal. Civ. Code § 3439.04(a).

Shoshana filed a summary judgment motion seeking dismissal of Seror's lawsuit. Shoshana primarily argued that Seror's claims seeking avoidance of the 2004 deed of trust under California law were time barred under the seven year statute of repose set forth in Cal. Civ. Code § 3439.09(c), which states:

> (c) Notwithstanding any other provision of law, a cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred.

Cal. Civ. Code § 3439.09(c).[3] According to Shoshana, because more than seven years had elapsed between the recording of the

[3] Recently, the California legislature amended the California Uniform Fraudulent Transfer Act. The amendments make relatively minor changes to the Act, and none of those changes affect our analysis in this appeal. Moreover, the amendments generally do not apply to transfers made before the effective date of the amendments. See 2015 Cal. Legis. Serv. Ch. 44 (S.B. 161).

4

(April) 2004 deed of trust and Seror's January 2012 filing of his complaint, Seror's fraudulent transfer claims arising from the 2004 deed of trust had been extinguished by operation of law. The bankruptcy court denied Shoshana's summary judgment motion, holding that the seven years provided by California's statute of repose had not been exceeded because the debtors had commenced their February 2011 bankruptcy case within seven years of the transfer.

Presumably because the statute of repose issue under Cal. Civ. Code § 3439.09(c) was decided as a matter of law in the summary judgment motion, Shoshana did not raise any factual or legal issues regarding this defense in the pretrial stipulation or in her trial documents. Nor did she raise during the pretrial or trial proceedings any issue related to the statute of limitations defense set forth in Cal. Civ. Code § 3439.09(a), which provides:

> A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought pursuant to subdivision (a) of Section 3439.07 or levy made as provided in subdivision (b) or (c) of Section 3439.07:
>
> (a) Under paragraph (1) of subdivision (a) of Section 3439.04, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant.

Cal. Civ. Code § 3439.09(a).[4]

---

[4]  Shoshana's answer to Seror's complaint included an affirmative defense alleging that Seror's claims were barred under the "applicable statute of limitations."  Nonetheless, the
(continued...)

5

At the conclusion of trial, the bankruptcy court stated its findings of fact and conclusions of law on the record. The court found not credible Doron's testimony that his mother Shoshana and his (now) deceased father Shlomo expected repayment of amounts Doron and Nava spent on family trips to Israel and on groceries while in Israel and that the two deeds of trust secured repayment of those amounts. According to the court, Doron's testimony was both bizarre and inconsistent regarding whether these amounts were gifts or loans. The court further found that Doron's "gifts and Israel" explanation did not jibe with Doron's alternate story that his parents lent him the money for various real estate transactions. In fact, the court explained, Doron's vague and inconsistent testimony about the bank accounts he used to partially fund some of his real estate transactions led the court to conclude that all of the accounts Doron referenced effectively belonged to Doron – even those bank accounts he claimed belonged to his parents. As the bankruptcy court put it:

> . . . he just used those accounts of his parents for his own purposes and they were effectively his accounts and was not clear that the money coming out of the accounts was even from the parents or something that he had put in earlier. There was no attempt to show the funds supplied by the parents. The statements all came to [Doron's] address, either the home or the business address.

[4](...continued)
parties' pretrial stipulation, approved by the court, did not reference this defense, and the stipulation explicitly provided that it superseded the pleadings and was to govern the course of trial. See Patterson v. Hughes Aircraft Co., 11 F.3d 948, 950 (9th Cir. 1993) ("A pretrial order generally supersedes the pleadings, and the parties are bound by its contents.").

6

Tr. Trans. (Nov. 3, 2014) at p. 35:10-17.

The bankruptcy court also did not believe Doron's statements that his father Shlomo had kept ledgers and that he (Doron) lost the two promissory notes memorializing the loans supposedly secured by the two deeds of trust. As the bankruptcy court explained, Doron was an experienced businessman who had made a living engaging in sophisticated real estate transactions. In light of this background, the court found it exceptionally hard to believe (and did not believe) in the existence of the ledger and the notes given Doron's inability to produce them. The court found that Doron had not credibly reconciled his 20 years of experience as a real estate investment professional - who owned interests in and/or partially controlled a number of real estate investment entities -  with his apparently nonchalant attitude with respect to the financing of one of his family's most important assets: the family residence.

As for the intent to hinder, delay or defraud their creditors, the court found that the debtors' intent largely was established by their pattern and practice of: (1) ensuring that assets of value were kept in the name of other family members, even though they continued to exercise control over the assets; and (2) ensuring that any current or future equity the debtors may have had in their residence was fully encumbered. The court inferred that the debtors' practice was initially motivated by Doron's concern over the litigious nature of the business he was engaged in and later by actual demands and lawsuits the debtors faced.

The bankruptcy court also found that the debtors received

7

less than reasonably equivalent value in exchange for both deeds of trust. The court further found, with respect to the 2009 deed of trust, that the debtors were insolvent at the time of the transaction or were rendered insolvent by the transaction, were left with insufficient assets in light of the business or transaction in which they were engaged, and intended to incur or reasonably should have believed they would incur debts beyond their ability to pay as they came due. However, the court answered each of these financial status questions in the negative with respect to the 2004 deed of trust.

Based on these findings, the bankruptcy court entered judgment against Shoshana avoiding the 2004 deed of trust as an actual fraudulent transfer under § 544(b) and Cal. Civ. Code § 3439.04(a)(1) and avoiding the 2009 deed of trust as both an actual and constructive fraudulent transfer under 11 U.S.C. §§ 544(b) and 548, as well as Cal. Civ. Code §§ 3439.04(a)(1), (a)(2)(A), (a)(2)(B) and 3439.05. The bankruptcy court further ordered both transfers recovered for the benefit of the estate pursuant to § 550(a). On November 26, 2014, Shoshana timely filed her notice of appeal.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(H). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court correctly rule that the 2004 and 2009 deeds of trust were fraudulent transfers?

8

**STANDARD OF REVIEW**

In appeals from judgments disposing of fraudulent transfer claims, the bankruptcy court's findings of fact are reviewed under the clearly erroneous standard and its conclusions of law are reviewed de novo. Decker v. Tramiel (In re JTS Corp.), 617 F.3d 1102, 1109 (9th Cir. 2010).

A bankruptcy court's factual findings are not clearly erroneous unless they are illogical, implausible or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

**DISCUSSION**

**A. Overview**

As set forth above, the bankruptcy court avoided both the 2004 deed of trust and the 2009 deed of trust as actual fraudulent transfers under § 544(b) and California Civil Code § 3439.04(a)(1). To the extent we can uphold the bankruptcy court's actual fraudulent transfer determination, we need not reach the court's constructive fraudulent transfer determination, which only pertained to the 2009 deed of trust.

Under § 544(b), a chapter 7 trustee may exercise the avoiding powers conferred upon creditors by California's version of the Uniform Fraudulent Transfer Act, Cal. Civ. Code § 3439, et seq., to the same extent those powers could have been exercised by a creditor holding an allowable unsecured claim against the debtor's bankruptcy estate. Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 232 (9th Cir. BAP 2007), aff'd in part and adopted, 551 F.3d 1092 (9th Cir. 2008); see also In re JTS Corp., 617 F.3d at 1111 ("Section 544 enables a bankruptcy

9

trustee to avoid any transfer of property that an unsecured creditor with an allowable claim could have avoided under applicable state law.").

To decide whether a transfer is avoidable under California's Uniform Fraudulent Transfer Act, we must interpret California law. In re Beverly, 374 B.R. at 232. We must answer any questions of law arising from the Act based on how the California Supreme Court would decide them. Id. If the California Supreme Court has not yet reached the issue in question, our job is to predict how the California Supreme Court would decide it. Kekauoha-Alisa v. Ameriquest Mortg. Co. (In re Kekauoha-Alisa), 674 F.3d 1083, 1087-88 (9th Cir. 2012) (citing Sec. Pac. Nat'l Bank v. Kirkland (In re Kirkland), 915 F.2d 1236, 1239 (9th Cir. 1990)).

**B.   Intent to Hinder, Delay or Defraud**

The Act provides in relevant part that a transfer is fraudulent as to a creditor, regardless of when the creditor's claim arose, if the debtor made the transfer with the actual intent to hinder, delay, or defraud any creditor. Cal. Civ. Code § 3439.04(a)(1). Bankruptcy courts examining transfers under this provision must focus on the debtor's state of mind. In re Beverly, 374 B.R. at 235. As long as the debtor had the requisite intent, a transfer will qualify as actually fraudulent even if reasonably equivalent value was provided. Id. Because § 3439.04(a)(1)'s language regarding the debtor's state of mind is stated in the disjunctive, intent to defraud a creditor is not required. Either an intent to hinder or an intent to delay a creditor also will suffice. Id.

10

As the plaintiff, Seror had the burden of proof to establish by a preponderance of the evidence the existence of the requisite state of mind. Id. Because direct evidence regarding the debtor's fraudulent or obstructive intent rarely is available, courts typically infer the debtor's intent from the surrounding circumstances. Id. To facilitate this process, the Act enumerates eleven non-exclusive "badges of fraud" – factors the court can consider in deciding whether the requisite intent existed. Cal. Civ. Code § 3439.04(b). These factors include the following:

(1) Whether the transfer or obligation was to an insider.
(2) Whether the debtor retained possession or control of the property transferred after the transfer.
(3) Whether the transfer or obligation was disclosed or concealed.
(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(5) Whether the transfer was of substantially all the debtor's assets.
(6) Whether the debtor absconded.
(7) Whether the debtor removed or concealed assets.
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b).

Notwithstanding the inclusion of this list in the statute, the list does not set in concrete the factors the trier of fact can or must consider to ascertain the debtor's intent. No single factor necessarily is determinative, and no minimum or maximum

11

number of factors dictates a particular outcome. As we explained in In re Beverly, the list should not be applied formulaically. In re Beverly, 374 B.R. at 236. Instead, the trier of fact should consider all of the relevant circumstances surrounding the transfer. Id. (citing Filip v. Bucurenciu, 129 Cal.App.4th 825, 834 (2005)).

Shoshana argues on appeal that the bankruptcy court's intent findings were clearly erroneous. With respect to the 2004 deed of trust, she states that the evidence regarding value given in exchange for the 2004 deed of trust might have been equivocal, but inadequate consideration alone cannot support a finding of actual intent to hinder, delay or defraud creditors. Shoshana also points to other "badges of fraud" factors and correctly notes that there is no evidence in the record that the debtors were insolvent in 2004 or that they were plagued by pending lawsuits at that time. In fact, while Shoshana did not mention it in her appeal brief, we further note that there was no evidence of concealment of the 2004 deed of trust, no evidence that the 2004 deed of trust transferred substantially all of the debtors' assets, and no evidence that the debtors were in the process of absconding at the time.

Even so, Shoshana's intent argument completely (and fatally) ignores the key findings on which the bankruptcy court based its intent determination. The bankruptcy court found that the debtors, particularly Doron, were engaged in a pattern and practice of shielding their assets from creditors. The court inferred from the entirety of the debtors' conduct that the various transfers the debtors made affecting title to and

12

encumbrances against their residence – including the 2004 deed of trust – were made for the purpose of keeping any equity in their residence as far away from their creditors as possible. The bankruptcy court acknowledged the absence of evidence of pending or imminently threatened litigation at the time of the 2004 deed of trust. The court nonetheless inferred from all of the circumstances that Doron realized at the time of the 2004 deed of trust that he was engaged in lines of business – real estate lending and real estate investment – that were inherently litigious and that this generic litigation risk constantly placed his family's assets at risk. As a result, the court concluded, this generic litigation risk motivated the debtors to execute and record the 2004 deed of trust.

Shoshana has not offered us any reason why we should conclude that the bankruptcy court's intent-related findings with respect to the 2004 deed of trust were illogical, implausible or without support in the record. Nor are we aware of any such reasons. Therefore, these intent-related findings were not clearly erroneous.

Shoshana offers even less argument in her opening brief challenging the bankruptcy court's intent-related findings pertaining to the 2009 deed of trust. Indeed, her argument is limited to a single paragraph, as follows:

> There was likewise no evidence of bad faith as to the 2009 Deed of Trust. That deed of trust was created by the Debtor because he erroneously believed that the 2004 Deed of Trust had been reconveyed. For the same reasons the 2004 Deed of Trust has no indicia of bad faith or fraudulent intent, the 2009 Deed of Trust, intended merely to replace it, likewise could not have been the product of any bad faith or fraudulent intent.

13

Aplt. Opn. Br. at 27 (citation omitted).

The bankruptcy court's intent-related findings pertaining to the 2009 deed of trust generally hinged on the same circumstances the court relied upon in finding the requisite intent with respect to the 2004 deed of trust. However, in addition to the generic litigation risk noted above, the bankruptcy court also found that, by the time of the 2009 deed of trust, the debtors' financial condition had deteriorated and the threat of litigation arising from specific claims had significantly increased, which only served to reinforce the bankruptcy court's determination that the debtors executed the 2009 deed of trust for the purpose of keeping any equity in their residence as far away from their creditors as possible. For the same reasons we conclude that the bankruptcy court's intent-related findings with respect to the 2004 deed of trust were not clearly erroneous, we similarly conclude that its intent-related findings with respect to the 2009 deed of trust were not clearly erroneous.

**C.   Limitations Defense Under Cal. Civ. Code § 3439.09(a) - Does the One Year Limitation Run from Discovery of the Transfer or Discovery of the Fraud?**

The only other challenge of Shoshana's that we need to discuss concerns the timeliness of Seror's claim under § 544(b) and Cal. Civ. Code § 3439.04(a)(1) with respect to the 2004 deed of trust. In her opening appeal brief, Shoshana argues for the first time that this claim of Seror's was untimely under Cal. Civ. Code § 3439.09(a).

Neither in her summary judgment motion nor at trial did Shoshana defend against Seror's claim based on Cal. Civ. Code § 3439.09(a). Nor did the parties' pretrial stipulation identify

14

any issue of law or fact that required the bankruptcy court to address the statute of limitations set forth in Cal. Civ. Code § 3439.09(a).

Ordinarily, federal appellate courts will not consider issues not properly raised in the trial courts. O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989); see also Moldo v. Matsco, Inc. (In re Cybernetic Servs., Inc.), 252 F.3d 1039, 1045 n.3 (9th Cir. 2001)(stating that appellate court would not explore ramifications of argument because it was not raised in the bankruptcy court); Scovis v. Henrichsen (In re Scovis), 249 F.3d 975, 984 (9th Cir. 2001) (stating that court would not consider issue raised for first time on appeal absent exceptional circumstances). An issue only is "properly raised" if it is raised sufficiently to permit the trial court to rule upon it. In re E.R. Fegert, Inc., 887 F.2d at 957.

Notwithstanding this general rule, "[a] reviewing court may consider an issue raised for the first time on appeal if (1) there are exceptional circumstances why the issue was not raised in the trial court, (2) the new issue arises while the appeal is pending because of a change in the law, or (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." Franchise Tax Bd. v. Roberts (In re Roberts), 175 B.R. 339, 345 (9th Cir. BAP 1994) (internal quotations omitted) (citing United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir. 1990)).

Shoshana has not identified any exceptional circumstances

15

that prevented her from raising the statute of limitations issue under Cal. Civ. Code § 3439.09(a) in the bankruptcy court. Nor did a change in law spawn the issue. Nor is the issue "purely" one of law. The statute of limitations issue raises the subsidiary question of when the fraudulent transfer "could reasonably have been discovered." Cal. Civ. Code § 3439.09(a). According to Shoshana, as a matter of law, because the 2004 deed of trust was recorded in 2004, any and all creditors of the debtors reasonably should have discovered **the transfer** within one year of the 2004 recordation. But we do not read the discovery provision contained in Cal. Civ. Code § 3439.09(a) as literally as Shoshana does. We believe that the one-year period under Cal. Civ. Code § 3439.09(a)'s discovery rule does not commence until the plaintiff has reason to discover **the fraudulent nature of the transfer**.

The California Supreme Court has not yet construed the discovery provision as set forth in Cal. Civ. Code § 3439.09(a). Nor have we found any published decisions from the California Courts of Appeal on this issue.[5] Consequently, as noted above, we must predict how the California Supreme Court will decide this issue. In interpreting California's version of the Uniform

---

[5] We are aware of one unpublished California Court of Appeal decision, Hu v. Wang, 2009 WL 1919367, at *6 (Cal. Ct. App. July 6, 2009), which held in part that Cal. Civ. Code § 3439.09(a)'s discovery rule means and refers to discovery of the fraudulent nature of the transfer and not just discovery of the transfer itself. In predicting the California Supreme Court's interpretation of Cal. Civ. Code § 3439.09(a), we do not rely upon Hu because it is an unpublished decision, and it may not be cited by California state courts. See Cal. Rules of Court Rule 8.1115.

16

Fraudulent Transfer Act, the California Supreme Court has said that courts should primarily focus on the statutory text  Mejia v. Reed, 31 Cal. 4th 657, 663 (2003).  As Mejia explained, giving the text its usual, ordinary and contextual meaning is the first and most important part of the statutory construction process. Id.  As Mejia put it:

> Because the statutory language is generally the most reliable indicator of legislative intent, we first examine the words themselves, giving them their usual and ordinary meaning and construing them in context. Every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect.

Id. (citations and internal quotation marks omitted).  Mejia further indicated that, when the contextual meaning of the statutory text is sufficient to answer the statutory construction question presented, it generally is unnecessary to consider secondary statutory construction aids like maxims of construction, legislative history and public policy.  Id.

Even though the California courts have not addressed the question of the meaning of the discovery provision set forth in Cal. Civ. Code § 3439.09(a), we are not working in a vacuum.  A number of courts from other jurisdictions have construed the same language in their versions of the Uniform Fraudulent Transfer Act.  See Field v. Estate of Kepoikai (In re Maui Indus. Loan & Fin. Co.), 454 B.R. 133, 137 (Bankr. D. Haw. 2011) (listing cases).  Some of these courts have strictly construed the statutory text and have held that the literal language of the Act's discovery provision requires courts to focus solely on discovery of the transfer itself.  See id. (listing cases). Other courts have more liberally construed the text and have held

17

that a contextual reading of the statute requires courts to focus on discovery of the fraudulent nature of the transfer; mere discovery of the transfer itself is not enough.  See, e.g., Schmidt v. HSC, Inc., 319 P.3d 416, 426-27 (Haw. Ct. 2014); Freitag v. McGhie, 947 P.2d 1186, 1189-90 (Wash. Ct. 1997).

We find the reasoning of the Schmidt-Freitag line of cases compelling.  As explained in detail in Schmidt, a contextual reading of the statute as well as common sense and the purpose of the Uniform Fraudulent Transfer Act – to provide relief to victims of fraudulent transfers – all militate in favor of a liberal construction of the discovery rule.  Schmidt, 319 P.3d at 426-27 (citing Freitag, 47 P.2d at 1189-90).

With the exception of different statute numbering, the Hawaii discovery provision at issue in Schmidt and the Washington discovery provision at issue in Freitag are identical to California's discovery provision as set forth in Cal. Civ. Code § 3439.09(a).  Nor do we perceive any material difference in underlying purpose between California's version of the Uniform Fraudulent Transfer Act and the versions of the Act codified in Washington and Hawaii.  Compare Schmidt, 319 P.3d at 426 ("the obvious purpose of the UFTA is to prevent fraud and to provide a remedy to those who are victims of fraudulent transfers") with Mejia v. Reed, 31 Cal. 4th 657, 664 (2003) ("This Act, like its predecessor and the Statute of 13 Elizabeth, declares rights and provides remedies for unsecured creditors against transfers that impede them in the collection of their claims.") (quoting Legis. Comm. Cmt. accompanying Cal. Civ. Code § 3439.01).

Furthermore, adoption of the liberal interpretation of Cal.

Civ. Code § 3439.09(a) would be consistent with California case law before the enactment of the Uniform Fraudulent Transfer Act, which applied the generic fraud discovery rule contained in Cal. Code Civ. Proc. § 338(4) – now § 338(d) – to pre-Act fraudulent transfer actions. See Adams v. Bell, 5 Cal.2d 697, 703 (1936) (citing Cal. Code Civ. Proc. § 338(4) and stating "if the creditor knows nothing about the fraudulent conveyance, the cause (in the absence of laches) does not arise **until he discovers the fraud** by which his rights have been invaded.") (emphasis added).

Based on the persuasiveness of cases like Schmidt and Freitag, supra, we predict that the California Supreme Court ultimately will hold that the one-year period under Cal. Civ. Code § 3439.09(a)'s discovery rule does not commence until the plaintiff has reason to discover the fraudulent nature of the transfer. Thus, any question regarding discovery of the fraudulent nature of the 2004 deed of trust is a factual question, and so the exception permitting consideration of "purely" legal issues raised for the first time on appeal does not apply here. Accordingly, we decline to resolve Shoshana's Cal. Civ. Code § 3439.09(a) issue for the first time on appeal.

**D. Limitations Defense Under Cal. Civ. Code § 3439.09(c) – Statute of Repose**

We acknowledge that Shoshana did argue in the bankruptcy court, in her summary judgment motion, that the statute of repose set forth in Cal. Civ. Code § 3439.09(c) barred Seror from pursuing this claim. However, the statute of repose issue under Cal. Civ. Code § 3439.09(c) and the statute of limitations issue under Cal. Civ. Code § 3439.09(a) are factually and legally

19

distinct issues. See Rund v. Bank of Am. Corp. (In re EPD Inv. Co., LLC), 523 B.R. 680, 685-88 (9th Cir. BAP 2015).

Shoshana did not discuss her argument under Cal. Civ. Code § 3439.09(c) in her opening appeal brief. Instead, she waited until her reply brief to address the Cal. Civ. Code § 3439.09(c) statute of repose issue. This would be sufficient grounds for us to decline to consider the statute of repose issue. See Christian Legal Soc'y v. Wu, 626 F.3d 483, 487-88 (9th Cir. 2010); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010).

In any event, even if we were to consider this issue, this panel recently held that Cal. Civ. Code § 3439.09(c)'s seven-year statute of repose does not bar a claim under § 544(b) and Cal. Civ. Code § 3439.04 so long as the claim arose less than seven years before the debtor's bankruptcy filing. In re EPD Inv. Co., LLC, 523 B.R. at 691-92. Here, the debtor's February 2011 bankruptcy case was filed within seven years of the April 2004 deed of trust, so Cal. Civ. Code § 3439.09(c)'s statute of repose did not bar Seror's Cal. Civ. Code § 3439.04 claim with respect to the 2004 deed of trust.

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's judgment avoiding the 2004 deed of trust and the 2009 deed of trust and recovering those transfers for the benefit of the estate.