FILED

MAR 21 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   CC-16-1185-FCTa |
| | ) | |
| MARISELA DANGCIL, | ) | Bk. No.   8:10-bk-15994-TA |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MARISELA DANGCIL, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Submitted Without Argument
on February 23, 2017[**]

Filed – March 21, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Theodor C. Albert, Bankruptcy Judge, Presiding

_____

Appearances:    Appellant Marisela Dangcil, pro se, on brief; John
M. Sorich of PIB Law on brief for Appellee
JPMorgan Chase Bank, N.A.

_____

_____

    [*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

    [**] By order entered on January 9, 2017, a motions panel determined that this appeal was suitable for submission on the briefs and record without oral argument pursuant to Federal Rule of Bankruptcy Procedure 8019.

Before: FARIS, CLEMENT,*** and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Debtor Marisela Dangcil appeals from the bankruptcy court's order granting creditor JPMorgan Chase Bank, N.A.'s ("Chase") motion for relief from the automatic stay under §§ 362(d)(1), (2) and (4).[1] The court correctly determined that Chase lacked adequate protection under § 362(d)(1) and, to that extent, we AFFIRM. But to the extent the court granted the motion under § 362(d)(4), we REVERSE the order.

## FACTUAL BACKGROUND

**A.    Prepetition events**

Ms. Dangcil and her then-romantic partner, Victor Chavez, purchased a residential property in Brea, California ("Property") in March 2006. Ms. Dangcil and Mr. Chavez both executed the deed of trust in favor of Countrywide Home Loans, Inc. ("Countrywide"), but only Mr. Chavez obtained a mortgage loan and executed the promissory note and associated documents. The original principal amount of the loan was $841,790.

In April 2006, Mr. Chavez conveyed the Property to Ms. Dangcil in her capacity as trustee for a family trust.

At some point thereafter, Chase acquired the promissory note

---

*** The Honorable Fredrick E. Clement, United States Bankruptcy Judge for the Eastern District of California, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

and deed of trust.[2]

Ms. Dangcil and Mr. Chavez jointly made the mortgage loan payments. Sometime prior to November 2010, Ms. Dangcil or Mr. Chavez[3] sought to refinance the mortgage loan on the Property. Ms. Dangcil claimed that she reached an agreement with Chase to refinance the mortgage loan; however, Chase denied that the parties ever entered into a loan modification agreement. There is no signed loan modification agreement in the record.[4]

Ms. Dangcil and Mr. Chavez ended their romantic relationship in December 2010. Mr. Chavez claimed that Ms. Dangcil and her family forced him off the Property in March 2011.

**B. Ms. Dangcil's bankruptcy cases**

Ms. Dangcil filed a chapter 13 petition in May 2010. She listed $968,688.63 in liabilities and $694,000 in assets. She failed to include the Property in her bankruptcy schedules or statement of financial affairs.

The inclusion of $1.1 million of debt related to the

---

[2] On or around May 9, 2013, Countrywide assigned the deed of trust to Chase. The record does not reflect when Chase acquired the promissory note and associated documents.

[3] Although the loan modification documents were addressed to Mr. Chavez, he claimed that he did not request or desire a loan modification for the Property. He said that his signature was forged on certain documents concerning Ms. Dangcil's attempts to modify the mortgage loan. Ms. Dangcil says that, as an ex-lover of hers, Mr. Chavez is an unreliable witness.

[4] A January 2011 unexecuted loan modification agreement provided that the current unpaid principal balance was $906,369.59. With the addition of interest, escrow, and other fees, the adjusted unpaid principal balance was to be $1,085,936.12. A November 2010 unexecuted loan modification agreement similarly provided for a new balance of $1,081,622.15.

3

Property made her ineligible for chapter 13 relief, so she sought to convert her case to one under chapter 11. The bankruptcy court granted her motion to convert. During the chapter 11 proceedings, Ms. Dangcil once again claimed that the Property was owned by a family trust.

In August 2011, Ms. Dangcil filed a motion to dismiss her case. The court denied the motion and instead converted her case to one under chapter 7.

On May 30, 2014, the chapter 7 trustee filed a notice of his intention to abandon the Property. He said that there was no realizable equity in the Property for the benefit of the estate. The trustee filed his final report on January 27, 2015, which assigned the Property an estimated net value of $0.

**C.    Motion for relief from stay**

On March 30, 2016, Chase filed its motion for relief from the automatic stay ("Motion"). It sought relief under § 362(d)(1) because its interest in the Property was not adequately protected and the bankruptcy case was filed in bad faith; under § 362(d)(2)(A) because Ms. Dangcil had no equity in the Property and the Property was not necessary to an effective reorganization; and under § 362(d)(4) because the bankruptcy filing was a part of a scheme to delay, hinder, or defraud creditors.

Chase represented that its claim totaled $1,286,606.10, which included $906,369.59 in principal, $268,862.61 in interest, and $111,373.90 in advances. It also stated that Ms. Dangcil had not made the past ninety-four payments over eight years for a total arrearage of $488,660.46. It estimated that, based on a

4

Zillow.com internet valuation, the fair market value of the Property was $531,018. As such, it asserted that the "equity cushion" in the Property was $0 and that Ms. Dangcil's equity in the Property was also $0.

As to the § 362(d)(4) claim, Chase attached the declaration of Mr. Chavez and stated that he (the borrower) did not apply for a loan modification and did not desire a loan modification. Chase had received a loan modification application on behalf of Mr. Chavez, but Mr. Chavez said that he did not sign or agree to the documents.

At the hearing on the Motion, the bankruptcy court stated that "[t]his is not decided on the merits but on burdens of proof." It said that Chase had failed to carry its burden, because the Zillow.com valuation was not admissible evidence.

Ms. Dangcil argued that Chase had agreed to modify the mortgage loan agreement. However, the court said it was not concerned with the purported loan modification but was only focused on whether there was equity in the Property for the estate. The court also asked Ms. Dangcil whether she had segregated any mortgage payments that she had not made over the past eight years; she answered that she had not.

Following the hearing, Chase filed supplemental evidence in support of the Motion. It submitted two valuations of the Property: $760,000 (according to a Residential Broker Price Opinion) and $892,000 (according to the Orange County Treasurer-Tax Collector).

The bankruptcy court held a second hearing on the Motion. Referencing Chase's supplemental evidence, the court told

5

Ms. Dangcil that the Property was overencumbered and that she had not made mortgage payments in a long time. Ms. Dangcil insisted, "I requested them to refinance the property, to give me a modification and they have not. So I don't have any defense at all." The court summarily granted the Motion.

In its June 14, 2016 order ("Order"), the court checked the boxes indicating that it granted the Motion under §§ 362(d)(1), (2) and (4). However, it did not check any of the boxes to specify the basis for granting the Motion under § 362(d)(4).

Ms. Dangcil timely appealed the Order.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court denied Ms. Dangcil due process.

(2) Whether the bankruptcy court erred in granting Chase relief from the automatic stay.

## STANDARDS OF REVIEW

"Whether an appellant's due process rights were violated is a question of law we review de novo." DeLuca v. Seare (In re Seare), 515 B.R. 599, 615 (9th Cir. BAP 2014) (citation omitted); see HSBC Bank USA, Nat'l Ass'n v. Blendheim (In re Blendheim), 803 F.3d 477, 497 (9th Cir. 2015) ("Whether adequate notice has been given for the purposes of due process is a mixed question of law and fact that we review de novo.").

We review for an abuse of discretion the bankruptcy court's

6

decision to grant relief from the automatic stay under § 362(d). Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 919 (9th Cir. BAP 2009) (citation omitted). Additionally, "[w]e review de novo contentions that present an issue of law regarding stay relief." Id.

"De novo review requires that we consider a matter anew, as if no decision had been made previously." Francis v. Wallace (In re Francis), 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

We apply a two-part test to determine whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. Id. Then, we review the bankruptcy court's factual findings for clear error. Id. at 1262. We must affirm the bankruptcy court's factual findings unless we conclude that they are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. Id.

## DISCUSSION

**A.  We will consider Ms. Dangcil's appeal despite her deficient briefs and excerpts of record.**

Chase requests that we strike Ms. Dangcil's opening brief and dismiss this appeal because her excerpts of record and brief do not comply with the applicable rules.

Chase's points are well taken. Ms. Dangcil's excerpts of record include only six documents, at least two of which do not appear to have been presented to the bankruptcy court. She fails

7

to provide a complete record on appeal and did not include the transcripts of the hearings until the BAP clerk's office told her to do so. Moreover, she does not provide citations to the record supporting many of her arguments; additionally, she does not cite any legal authority for her arguments regarding § 362(d).

Nevertheless, while many aspects of Ms. Dangcil's appellate briefs and record are deficient, Ms. Dangcil is proceeding pro se in this appeal, so we will construe her arguments liberally. See Kashani v. Fulton (In re Kashani), 190 B.R. 875, 883 (9th Cir. BAP 1995). We will also review the excerpts of record provided by Chase and will exercise our discretion to review the bankruptcy court's docket. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

However, we will not consider evidence and argument not first presented to the bankruptcy court, including Ms. Dangcil's Exhibits D and E. See Oyama v. Sheehan (In re Sheehan), 253 F.3d 507, 512 n.5 (9th Cir. 2001) ("Evidence that was not before the lower court will not generally be considered on appeal"); Kirschner v. Uniden Corp. of Am., 842 F.2d 1074, 1077-78 (9th Cir. 1988) (papers not filed or admitted into evidence by trial court prior to judgment on appeal were not part of the record on appeal and thus stricken).

**B. Despite Chase's failure to serve Ms. Dangcil properly, the bankruptcy court did not deny Ms. Dangcil due process.**

Ms. Dangcil contends that the court denied her due process because Chase failed to serve her with its Motion and supplemental valuation, and, as a result, she was not able to adequately respond to Chase's arguments. Although we agree that

8

Chase repeatedly ignored the applicable service rules, we disagree that the court denied her due process.

Generally speaking, a party must receive sufficient notice of any adverse action and the opportunity to be heard. See Tennant v. Rojas (In re Tennant), 318 B.R. 860, 870 (9th Cir. BAP 2004). According to the United States Supreme Court:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance.

Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) (citations omitted).

Section 362(d) provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay" in certain circumstances. Section 102(1) defines the phrase "after notice and a hearing":

> (1) "after notice and a hearing", or a similar phrase -
>
>     (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
>
>     (B) authorizes an act without an actual hearing if such notice is given properly and if -
>
>         (i) such a hearing is not requested timely by a party in interest; or
>
>         (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act[.]

"[T]he concept of notice and a hearing is flexible and

depends on what is appropriate in the particular circumstance." In re Tennant, 318 B.R. at 870 (citing Great Pac. Money Markets, Inc. v. Krueger (In re Krueger), 88 B.R. 238, 241 (9th Cir. BAP 1988)).

Ms. Dangcil argues that because Chase did not serve her with the Motion or supplemental valuation, the Order was a "default" in Chase's favor. She argues that, had Chase done its duty to perform title history searches,[5] it would have known that she was on title to the Property and should have been served with the Motion under Civil Rule 4(e)(2)(A).[6]

We agree that Chase did not properly serve the Motion on Ms. Dangcil.

Local Bankruptcy Rule 4001-1(c)(1)(C)(i) requires service of a motion for relief from stay on both the debtor and her attorney. Chase does not deny that it failed to serve Ms. Dangcil with the Motion, reply, and supplemental valuation. The various proofs of service confirm that Ms. Dangcil, who at the time was proceeding pro se, did not directly receive copies of those documents. Rather, it appears that Chase sent those documents only to attorneys who had previously represented

---

[5] She claims that a title insurer may be held liable for the damages it causes by breaching its duty to examine title history records. There is no indication in the record that Chase is a title insurer.

[6] Ms. Dangcil selectively references service under Civil Rule 4(e)(2)(A), which provides that service may be accomplished by "delivering a copy of the summons and of the complaint to the individual personally[.]" But in a bankruptcy case, Rule 7004(b) provides that service may be made by first class mail postage prepaid to an individual's home or business.

Ms. Dangcil or who represented her only for a limited purpose. Chase's task was not unreasonably difficult: it did not need to serve her personally. But it utterly failed to even mail her a copy of its filings. Particularly when dealing with a pro se litigant, a party should ensure that the pro se litigant has notice of its legal actions. Chase failed in this respect.

Nevertheless, we find no reversible error.

First, Ms. Dangcil did not raise the due process issue before the bankruptcy court or otherwise object to the notice or hearing afforded by the court. As such, she has waived this issue. See Yamada v. Nobel Biocare Holding AG, 825 F.3d 536, 543 (9th Cir. 2016) ("[g]enerally, an appellate court will not hear an issue raised for the first time on appeal"); Ezra v. Seror (In re Ezra), 537 B.R. 924, 932 (9th Cir. BAP 2015) ("Ordinarily, federal appellate courts will not consider issues not properly raised in the trial courts."). A debtor's failure to raise due process challenges before the bankruptcy court waives such claims on appeal. See Zamos v. Zamos (In re Zamos), 300 F. App'x 451, 452 (9th Cir. 2008) ("Jerome has waived his contention that his due process rights were violated by Patricia's delay in bringing suit to collect delinquent support payments, as he did not raise it below.").

Ms. Dangcil says that she raised this argument in her opposition to the Motion. She admits that she did not "check the box for lack of service[,]" but claims that she "was representing herself and may not have understood she needed to make the argument. Or, perhaps, it was simply a clerical error and [she] just missed checking the appropriate form box." In addition to

11

this equivocal argument, she argues that she raised this issue before the bankruptcy court because Chase argued in its reply that her opposition was untimely. But she admitted that she actually received the Motion and never told the court that she was not afforded notice or the opportunity to be heard. In other words, she failed to present the due process argument to the bankruptcy court, and we will not consider it for the first time on appeal.

Second, despite Chase's failure to serve Ms. Dangcil, she had actual notice of the Motion, responded to the Motion in detail, and appeared and argued at both hearings. Ms. Dangcil claimed that she received the Motion five days after it was filed, which was twenty-two days before the hearing. Despite the delay, she had adequate notice. She also had ample opportunity to present her arguments and be heard, and she availed herself of that opportunity. Thus, Ms. Dangcil was not deprived of either notice or an opportunity to be heard.

Third, even in cases where a bankruptcy court errs by failing to provide adequate notice and hearing, the debtor must show prejudice from the procedural deficiencies. See Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 776-77 (9th Cir. 2008) ("Because there is no reason to think that, given appropriate notice and a hearing, Rosson would have said anything that could have made a difference, Rosson was not prejudiced by any procedural deficiency."). In Rosson, the Ninth Circuit held that the debtor was deprived of a meaningful opportunity to be heard; nevertheless, because he could "show no prejudice arising from the defective process afforded him[,]" the bankruptcy court

12

properly converted the case to chapter 7. Id. (citations omitted); see City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.), 22 F.3d 954, 959 (9th Cir. 1994) (rejecting a due process claim for lack of prejudice where debtor could not show that different or additional arguments would have been presented if the bankruptcy court had timely approved petition for new counsel).

Ms. Dangcil fails to explain what more she would have said if she had received timely service of the Motion and supplemental appraisal. Her inability to give us any persuasive, substantive argument against the Order on appeal proves that she could not have made any such argument before the bankruptcy court even if she had been given more notice. We fail to see how Ms. Dangcil "would have said anything that could have made a difference." See In re Rosson, 545 F.3d at 777.

Therefore, although Chase neglected to serve Ms. Dangcil with any of the relevant filings, the bankruptcy court did not deprive Ms. Dangcil of due process.

**C.    The bankruptcy court did not abuse its discretion in granting Chase relief from the automatic stay.**

**1.    The court correctly granted stay relief "for cause."**

Ms. Dangcil argues that she had ample equity in the Property and that Chase was adequately protected. She also argues that the Property would have had an ample equity cushion if Chase had not dishonored a loan modification agreement. We disagree on both counts.

Sections 362(d) provides, in relevant part:

(d) On request of a party in interest and after notice

13

and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if -

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization[.]

§§ 362(d)(1), (2).

Section 362(d)(1) allows the bankruptcy court to grant a creditor relief from the automatic stay "for cause." "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." MacDonald v. MacDonald (In re MacDonald), 755 F.2d 715, 717 (9th Cir. 1985). The lack of adequate protection is one of many types of "cause" warranting relief under § 362(d)(1). Ellis v. Parr (In re Ellis), 60 B.R. 432, 435 (9th Cir. BAP 1985).

"[T]he party seeking relief must first establish a prima facie case that 'cause' exists for relief under § 362(d)(1). Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted. If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied." Lapierre v. Advanced Med. Spa Inc. (In re Advanced Med. Spa Inc.), No. BAP EC-16-1087, 2016 WL 6958130, at *4 (9th Cir. BAP

14

Nov. 28, 2016); see § 362(g) (the party requesting relief has the burden of proof regarding equity in the property, but the party opposing relief has the burden of proof on all other issues).

In the present case, the bankruptcy court held that, due to lack of equity in the Property, Chase was not adequately protected. Ms. Dangcil argues on appeal that there was sufficient equity in the Property to protect Chase. She calculated the amount of equity by subtracting the original principal loan amount of $841,790 from Chase's valuation. She claims that she had as much as $50,000 in equity, which is at least 5.6 percent of the value of the Property.

Ms. Dangcil did not tell the bankruptcy court that she had equity in the Property or that Chase was adequately protected.[7] Rather, she only argued that Chase did not meet its burden regarding the valuation and that Chase had agreed to a loan modification. We will not consider arguments that she did not raise below. See Yamada, 825 F.3d at 543; Ezra, 537 B.R. at 932. Nevertheless, even if we address the substance of her argument, she is simply wrong.

Ms. Dangcil's argument rests on the assertion that Chase's

---

[7] Ms. Dangcil concedes that she did not raise these arguments below but instead argues that she could not have made these arguments to the bankruptcy court because Chase did not provide the valuation until after the initial hearing and "she did not have a real chance to respond in writing or object to Appellee's valuation argument in the trial court." Although Chase does not deny that it failed to serve Ms. Dangcil with the supplemental valuation, she had an opportunity to challenge the valuation and argue that she had equity in the Property at the second hearing but failed to do so. She also could have sought reconsideration by the bankruptcy court but neglected to do so.

15

loan balance was $841,790. This is the original principal amount of the loan. Ms. Dangcil's argument ignores the undisputed fact that, because she had not made any payments on the loan for about eight years, the loan balance had grown to $1,286,606.10 due to the accrual of interest and other charges. Using the undisputed current loan balance proves that there was no "equity cushion" to provide adequate protection to Chase.

Additionally, we have previously held that "a debtor's persistent failure to make payments, standing alone, may constitute adequate cause for relief from the stay." Aguilar v. Ocwen Loan Servicing, LLC (In re Aguilar), BAP No. CC-14-1071-PaTaKu, 2014 WL 6981285, at *4 (9th Cir. BAP Dec. 10, 2014), aff'd, --- F. App'x ----, 2017 WL 393763 (9th Cir. Jan. 30, 2017) (citing In re Ellis, 60 B.R. at 435; Price v. Del. State Police Fed. Credit Union (In re Price), 370 F.3d 362, 373 (3d Cir. 2004) ("A persistent failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay.")). The bankruptcy court noted that Ms. Dangcil had not made any mortgage loan payments for eight years, which totaled ninety-four missed payments and a deficiency of $488,660.46. Ms. Dangcil's admitted failure to make any mortgage loan payments (or segregate mortgage payments) in eight years further established cause to grant relief from stay under § 362(b)(1).

Accordingly, the court did not abuse its discretion in granting relief from the automatic stay pursuant to § 362(d)(1). Given our discussion above, we need not consider the court's other bases for granting the Motion.

16

## 2. The purported loan modification is irrelevant and does not preclude stay relief.

Ms. Dangcil focuses largely on her efforts to obtain a loan modification, insisting that the "loan modification is valid, and Appellee has dishonored it to date." She contends that she was "entitled to" the modification, and, had Chase honored the loan modification, she would have equity in the Property. She also claims that Chase acted in bad faith when it refused her offers of payment under the loan modification agreement. We reject these arguments.

There is no evidence in the record that Chase agreed to any loan modification. Under California law, "[i]n order for a contract to form, there must be a meeting of the minds with an intent to be bound by a legally enforceable agreement." Chaganti v. I2 Phone Int'l, Inc., 635 F. Supp. 2d 1065, 1071 (N.D. Cal. 2007), aff'd, 313 F. App'x 54 (9th Cir. 2009) (citation omitted). "An offer must clearly articulate the terms of the agreement and the acceptance must be absolute, unqualified and a mirror image of the offer." Id. (citations omitted)

Ms. Dangcil failed to present either the bankruptcy court or this Panel with an executed loan modification agreement or proof of Chase's assent to an agreement. Rather, she only provides us with e-mails (not presented to the bankruptcy court) that show that a representative for Chase or Countrywide forwarded a draft of a loan modification agreement. She claims that the superior court assumed that the parties were going to enter into a loan modification agreement, but this is not supported by competent evidence, nor does it prove that there was an enforceable

17

agreement.

Further, even if the agreement were binding on Chase, Ms. Dangcil still would not have any equity in the Property. According to the unexecuted loan modification agreements, the loan modification would not have reduced the loan balance; rather, it would have added the delinquent interest to the principal sum of the loan. Thus, the principal amount owed would have increased from the original principal amount of $841,970 to $1,085,936.12 (based on the January 2011 unexecuted agreement), or $1,081,622.15 (based on the November 2010 unexecuted agreement). She is patently wrong that the loan modification would result in a $50,000 equity cushion in the Property.

### 3. The record does not support stay relief under § 362(d)(4).

Ms. Dangcil contends that the court erred in granting the Motion based on § 362(d)(4). The Order identified § 362(d)(4) as a basis for the court's ruling but the court's oral ruling made clear that it was solely focused on the issue of equity in the Property under §§ 362(d)(1) and (2).

We agree that the inclusion of § 362(d)(4) in the Order is probably an oversight by the court, based on its comments at the hearings and its failure to identify the basis for granting relief under § 362(d)(4). Accordingly, we reverse the Order only to the extent it includes § 362(d)(4) as a basis for granting the Motion.

### CONCLUSION

For the reasons set forth above, the bankruptcy court did not deny Ms. Dangcil due process, despite Chase's failure to

18

serve her.  The court also did not abuse its discretion in granting Chase relief from the automatic stay.  Therefore, we AFFIRM IN PART the bankruptcy court's decision to grant relief from stay under § 362(d)(1) and REVERSE IN PART the Order as to stay relief under § 362(d)(4) only.