In re Pamela Ann MOZER, Debtor.

In re Law Offices of Pamela Ann Mozer, Debtor.

Pamela Ann Mozer and Law Office of Pamela Ann Mozer, P.C., Appellants,

v.

Amy L. Goldman, Appellee.

Nos. CV 03–4797 JVS, CV 03–4802 JVS.

United States District Court, C.D. California.

Dec. 16, 2003.

---

Richard K. Diamon, Danning, Gill, Diamond & Kollitz, LLP, Los Angeles, CA, for Plaintiff.

Dennis P. Riley, Rena E. Kreitenberg, Mesisca, Riley & Kreitenberg, LLP, Los Angeles, CA, for Defendant.

### Memorandum of Decision

SELNA, District Judge.

I. *Background.*

Prior to the commencement of their Chapter 7 cases, Pamela Ann Mozer ("Mozer") and Law Office of Pamela Ann Mozer ("Mozer Firm") (collectively "Debtors") filed a complaint seeking damages from Mozer's former law partners, Dennis P. Riley, Law Offices of Dennis P. Riley, PC, Rena E. Kreitenberg, and Law Offices of Rena E. Kreitenberg, PC (collectively "Buyers"). The Buyers filed a cross-complaint against the Debtors seeking rescission and damages. After a jury trial, judgment was entered directing that the Debtors take nothing on their complaint, and that Buyers recover approximately $500,000, now approximately $600,000 with interest, against the Debtors on the Buyers' cross-complaint.

After the jury verdict, the Debtors commenced these Chapter 7 cases. The Buyers offered to purchase all of the Debtors' appellate rights from each estate for $10,000 per estate. The Trustees filed their Sale Motions seeking approval to sell the estates' right, title, and interest in the litigation. The appellate rights consisted of both the appeal on the causes of action contained in the Debtors' complaint and the right to defend the liability resulting from the adverse judgment on the Buyers' cross-complaint. This appeal principally concerns the Debtors' rights to defend against the adverse judgment on the cross-complaint ("Defensive Appellate Rights"). The Debtors opposed the Sale Motions. The Bankruptcy Court granted the motions, and the appellate rights, including the Defensive Appellate Rights, were sold to Buyers for $10,000 in each respective bankruptcy, which sums have been paid to the bankruptcy trustees. The Debtors' motion for reconsideration was denied on June 4, 2003. The Debtors also have filed a Motion for Stay of the Sale Pending Appeal to the United States District Court. The Debtors bring this appeal as a result of the Bankruptcy Court's denial of the Debtors' motion for reconsideration.

The Bankruptcy Court's conclusions of law are reviewed *de novo. Ragsdale v. Haller,* 780 F.2d 794, 795–96 (9th Cir.1986). The Bankruptcy Court's findings of fact are reviewed under the clearly erroneous standard unless the analysis was "infected by legal error." *In re Envisionet Computer Services, Inc.,* 275 B.R. 664 (Bankr.D. Maine 2002)(citing *In re Indian Motocycle Co., Inc.,* 261 B.R. 800, 805 (1st Cir. BAP 2001)).

The Debtors raise six main grounds of attack: (1) The Debtors' appellate rights with respect to the Buyers' judgment, the Defensive Appellate Rights, do not constitute property of the estates under Section 541 of the Bankruptcy Code; (2) The sale

of the Defensive Appellate Rights deprives the Debtors of an opportunity to obtain a "fresh start"; (3) The sale of Defensive Appellate Rights violates due process and violates the Constitutional notion of fundamental fairness; (4) The sale of the Defensive Appellate Rights is not in the best interest of the estates, the Debtors, or the creditors; (5) Notice of the sale of the appellate rights was not adequate; and (6) There was an insufficient factual basis for the Bankruptcy Court to make a good faith determination.

## II. *Are the Defensive Appellate Rights Property?*

 The Debtors contend that the Bankruptcy Court erred in approving the Sale Motions because the Debtors' Defensive Appellate Rights do not constitute property of the estate under Section 541 of the Bankruptcy Code. (Appellants' Brief, p. 7.) The law[1] is settled on two points: (1) Choses in action owned by a debtor, including the right to pursue such claims on appeal, are property within the meaning of Section 541, *e.g., Bostanian v. Liberty Savings Bank,* 52 Cal.App.4th 1075, 1083, 61 Cal.Rptr.2d 68 (1997); and (2) Obligations such as debts are not property, *In re Marriage of Eastis,* 47 Cal.App.3d 459, 464, 120 Cal.Rptr. 861 (1975). The parties have found no case determining whether the right to appeal constitutes property. Here, the Debtors' argument essentially hinges on equating an obligation with the right to challenge the obligation through the exercise of the right to appeal.

 The Debtors argue that the Defensive Appellate Rights are not property of the estate because of the nature of the underlying judgment from which they appealed. Specifically, because the Debtors' appeal is from a judgment against the Debtors, rather than for the Debtors, the Debtors contend that the right to defend against the liability created by the adverse judgment on the cross-complaint in favor of the Buyers is a liability and not property. The Debtors assert that the distinction between rights to appeal a judgment on a debtor's claim as opposed to a judgment on a claim against a debtor is equivalent to the distinction between assets and liabilities. Because Section 363 of the Bankruptcy Code permits a trustee, after notice and a hearing, to sell property of the estate, Debtors conclude that the Defensive Appellate Rights are not saleable.

Buyers argue that because the bankruptcy estate succeeds to all rights under a judgment entered pre-petition, all the appellate rights, including the Defensive Appellate Rights, may be sold by the Trustees. The bankruptcy estate includes all of the debtor's legal and equitable interests in property as of the commencement of the case. 11 U.S.C. § 541(a).

The Debtors' argument relies on blurring the distinction between the underlying judgment itself and the right to appeal such a judgment. Buyers contend that the former may by considered a liability while the latter is clearly property. This interpretation is consistent with California Civil Code § 655, which defines property, in relevant part, as:

> ownership of all inanimate things ...; of all obligations; of such products of labor or skill as the composition of an author; the good-will of a business, trademarks and signs, and of *rights created or granted by statute.*

Cal. Civ.Code § 655 (emphasis supplied). Buyers assert that because the Defensive Appellate Rights are created or granted by statute, they are necessarily property under California law. While there may be

---

1. The bankruptcy statute defers to the relevant state's definition to determine what constitutes "property." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

other defects in Buyers' position, *see infra,* the Court is persuaded by their argument. The right to appeal is valuable in nature and is the property of the bankruptcy estate under California's broad concept of property rights. Therefore, all of the Debtors' appellate rights, including the Defensive Appellate Rights, are saleable by the Trustee. The Defensive Appellate Rights arising from a judgment against the Debtor are not qualitatively different with respect to their status as property than appellate rights arising from a judgment on the Debtors' claims. The Debtors are unable to cite to any California or Federal authority in support of their position.[2]

Although couched as the sale of a chose in action, *Bostanian* is particularly informative. The cause of action in question was to set aside a foreclosure. Obviously, the debtor's assets would have been increased if he were able to pursue the cause successfully. Nevertheless, the court found nothing improper in the sale of the claim. *Bostanian v. Liberty Savings Bank,* 52 Cal.App.4th at 1086, 61 Cal. Rptr.2d 68. Successful exercise of the Defensive Appellate Rights has the same analytic effect as the pursuit of an action to set aside.

## III. *Fresh Start.*

The concept of a "fresh start" does not apply to all debtors equally. As a corporate entity, the Mozer Firm's assets will be distributed to the creditors of the Chapter 7 proceeding, and it will cease to exist. *In re Artimm, S.r.l.,* 278 B.R. 832, 843 (Bankr.C.D.Cal.2002)("a fresh start is not at issue, because this case involves a corporation rather than an individual"). Thus, as far as the Mozer Firm is concerned, a fresh start is irrelevant.

However, Mozer herself stands in a different position. She argues that the Buyers' purpose in buying the Defensive Appellate Right is to set up her liability under the state judgment as non-dischargeable in the Bankruptcy Court. Mozer argues that Section 524(c) of the Bankruptcy Code denies the trustee the power to waive discharge or dischargeability. However, sale of the Defensive Appellate Rights by her Trustee is not literally nor is it tantamount to a waiver of dischargeability by the Trustee. The underlying judgment against Mozer, even if final, is not prima facie non-dischargeable. Mozer has represented to this Court that "additional facts would need to be established and that the debt would not be non-dischargeable even if the state court judgement were to become final." (Appellants' Opposition to Shorten Briefing Schedule and Waive Oral Argument, p. 2.) To be sure, sale of the Defensive Appellate Rights may be unhelpful to her in defeating a non-dischargeability claim, but she is in no worse position than if she were permitted to pursue the state court appeal and lost.[3]

---

2. There is authority directly supporting the proposition that all issues on appeal arising out of the litigation are the property of the bankruptcy estate pursuant to Section 541. *See In re Gainesville Venture, Ltd.,* 159 B.R. 810 (Bankr.S.D.Ohio 1993)("When the limited partnership is a chapter 11 debtor, however, any *causes of action or defenses* of the limited partnership to a state court foreclosure action are property of the partnership's bankruptcy estate pursuant to 11 U.S.C. § 541(a)"; emphasis supplied).

3. As the Bankruptcy Court observed in rejecting this argument: "once you get to the point that this right is the property of the estate, then I believe that it's subject to the same rules as any other asset that the trustee . . . is charged with administration." (M.E.R.143.) "M.E.R." refers to Excerpts of Record in Mozer's individual appeal, *In re Pamela Ann Mozer,* CV 03–4802–JVS; "C.E.R." refers to the Excerpts of Record in the appeal of the Law Office of Pamela Ann Mozer, *In re Law*

## IV. *The Debtor's Right to Due Process and Fairness.*

The Debtors argue that the Sale Orders deprive the Debtors of both their appellate rights in state court and also deprive Mozer of her right to a trial in an adversary proceeding. The Debtors assert that this deprivation violates the Fifth and Fourteenth Amendments. The Debtors argue that their fundamental rights, particularly the right to a fair trial, were violated by the rendering of the state court judgment against the Debtors. (Appellants' Brief, p. 16.)

■■■ The Court has held that the appellate rights, including the Defensive Appellate Rights, are property that can be sold by the Trustees. Clearly, the Debtors had the constitutional right not to be deprived of property without due process. However, the Debtors lost the rights to the property through the process of filing for Chapter 7 relief, thereby passing all pre-petition property into the bankruptcy estate. Loss of property through the Chapter 7 process is not a deprivation of property without due process. Further, despite the Debtors' contentions that they did not have the capital resources to compete with the four non-bankrupt entities participating in the bidding, the Debtors did have the opportunity to secure means to bid for these rights and chose not to do so. (M.E.R. 169, 171.) The fact that certain rules and restrictions governing the Debtors' pre-petition property follow from the election of this process does not imply any violation of constitutional rights. The sale of the appellate rights is no different than the sale of any other property of a

debtor. The Court concludes that there is no basis in the record from which to find any violation of the Debtors' Fifth or Fourteenth Amendment rights.[4]

## V. *Best Interests of the Estates.*

■■■ In order to approve the proposed sales, the Bankruptcy Court was required to show that it is fair and equitable and in the best interest of the estate. *Matter of Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr.D.Del.1987). The Debtors assert that the sales are not in the best interests of the estates because there is no evidence that receiving $10,000 for each estate was better than risking the appeal.

Both the corporate bankruptcy trustee and the personal bankruptcy trustee joined in the Motion to Sell Estate's Interest in Certain Appellate Rights. The Trustees pointed out that litigation on behalf of the Debtors was not financially feasible. As the Buyers point out in their briefs, the personal bankruptcy trustee stated,

> [E]ven if the estate were to continue the appeal *and* were ultimately successful . . . , the estate would not be entitled to a money judgment per se because no amount of damages was plead [*sic*] in the Complaint, and therefore, the estate would be forced to re-litigate in the Civil Action if a recovery were sought.

(M.E.R. 9:5–11; emphasis supplied.) While the Trustee's remarks are undoubtedly correct, there is no indication that any substantive evaluation of all aspects of the appeal was made. The odds of success necessarily weigh on the value of both

---

*Office of Pamela Ann Mozer,* CV 03–4797–JVS.

**4.** Moreover, the basic assumption that the Debtors have an absolute Constitutional right to appeal the state court judgment is flawed. Due process does not compel an absolute right to appeal. *Adsani v. Miller,* 139 F.3d

67, 76 (2d Cir.1998). Appellate rights may be limited by statute. *E.g., Cohen v. Beneficial Indus. Loan Corporation,* 337 U.S. 541, 551–52, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Here, the right is subject to the restrictions on a debtor's property which are part of the bankruptcy process.

aspects of the appeal. If the Debtors were as likely to succeed with their Defensive Appellate Rights as a $1 bet on the Super-Lotto, $10,000 may well be an appropriate sales price representing the market value of a slim possibility of eliminating the liability. If the odds of overturning the judgment were 1 in 2, say because of an obvious and incurable instructional error, the value of the Defensive Appellate Rights would be substantially higher. If an informed evaluation of the Defensive Appellate Rights is made, the Trustees may well be acting in the best interest of the estates and the creditors.[5]

Assume an estate has debts of $1 million, of which an adverse judgment against the debtor amounts to $600,000. Assume that there is a 1 in 2 chance of prevailing on appeal. If the trustee accepted $300,000 for the Defensive Appellate Rights, he would in effect reduce the $600,000 judgment obligation to $300,000. Of course, he could allow the appeal to go forward, hoping for a victory. But his business judgment could hardly be faulted for minimizing risk and maximizing the estate if he took the less aggressive course of selling the rights.

Similarly, with regard to the appeal on the Debtors' claims, one needs to make a substantive evaluation of the potential outcome of the litigation. If the odds on appeal are better than the SuperLotto, but still 100 to 1, the rights may be worth very little. But if the odd are 1 in 2, and there is a potential for a substantial recovery on retrial, the rights may be quite valuable. Even if the estates did not have the funds, or desire, to pursue a trial after a success-

ful appeal, the choses in action would plainly have value and could be sold in the market place.

■ Here the Court finds that, with respect to the appellate rights on the Debtors' claims, both Trustees conducted a sufficient inquiry to determine that the rights were probably of little value. (Corporate Trustee's Motion for Order Approving Sale of Estate's Interest in Certain Appellate Rights, pp. 7–8, C.E.R. 7–8; Individual Trustee's Motion ... to Sell Certain Appellate Rights, pp. 4–5, M.E.R., 4–5.) However, the record reveals no analysis of the Defensive Appellate Rights. The assertion at oral argument on the Sale Motions by counsel for the individual trustee that the Trustees "have done their diligence" is not substantiated with respect to the Defensive Appellate Rights. (C.E.R.202:14–23.)

A critical analysis of the value of the appellate rights would seem to be more important when considering the Defensive Appellate Rights. With respect to the appellate rights on the Debtors' choses in action, the Trustees can at least look to the market place for a reasonableness check on their own conclusions, and in fact the Trustees did so here. (Corporate Trustee's Motion for Order Approving Sale of Estate's Interest in Certain Appellate Rights, pp. 8–9, C.E.R. 8–9; Individual Trustee's Motion ... to Sell Certain Appellate Rights, p. 15, M.E.R. 15.) The market for Defensive Appellate Rights is substantially truncated and consists of only the debtor and the judgment creditor. They are the only parties who can benefit

---

5. The Debtors raise the specter that if the sale of Defensive Appellate Rights is condoned, a judgment creditor with a judgment large enough to threaten the financial viability of the judgment debtor would simply force the judgment debtor into bankruptcy, and seal the judgment debtor's fate by buying the Defensive Appellate Rights. (Appellants' Brief, p.

19.) This assumes that the trustee makes no determination of the merits of the appeal, and allows the right to be sold out for a song. There is no basis for such an assumption where the Court requires that the trustee come forward with a substantive assessment of the appeal.

from the appeal, and it is unlikely that others would pay for the naked right to litigate in absence of the prospect of financial reward. The debtor may or may not have sufficient funds to make a bid representing the true economic worth of the Defensive Appellate Rights.[6] And the judgment debtor has an interest in minimizing the amount of the sale, thus maximizing potential net recovery under his judgment.[7] Thus, it is questionable whether market forces alone are sufficient to ensure that the sales were in the best interest of the estate.

For all the foregoing reasons, the Court finds that, in the absence of a substantive evaluation of both aspects of the Debtor's appellate right, the Bankruptcy Court's finding that the sales were in the best interest of the estates and the creditors is clearly erroneous.

## VI. *Notice to Justify Sale Orders.*

The Debtors argue that the Notice of Sale did not adequately describe the "true nature" of the sale and a justification for the transaction so the Bankruptcy Court could determine if it were a reasonable resolution of the disputes. (Appellants' Brief, p. 22.) The Court finds no evidence supporting this claim. The record indicates that the trustees presented evidence regarding the effect of the sales on creditors and that sufficient funds existed in the estates to pay creditors' claims without dilution. (C.E.R.204:24–205:9.)

## VII. *Good Faith Purchasers.*

The Debtors also contend that Buyers' purposes were clearly improper and insufficient evidence existed before the Bankruptcy Court to make a determination that the Buyers were good faith purchasers entitled to the protections of 11 U.S.C. § 363(m). The Bankruptcy Court held a separate hearing on the issue of whether Buyers were good faith purchasers, and required that Dennis P. Riley, representative of the Buyers, testify. The Debtors' counsel cross-examined Riley. The Bankruptcy Court was present to assess the credibility and personal knowledge of the witnesses, and concluded that the Buyers were good faith purchasers, and that their purpose in purchasing the Appellate Rights was not improper. (C.E.R.240:9–12.) The Bankruptcy Court's finding that Buyers were good faith purchasers is supported by the record, and certainly not clearly erroneous.

## VIII. *Conclusion.*

The decision of the Bankruptcy Court approving the sale of the Debtors' appellate right is reversed and remanded to the Bankruptcy Court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

---

**6.** Arguably, a showing that the debtor had access to capital might diminish the importance of a substantive evaluation of the appellate rights, but given the nature of the asset being sold, it is unlikely to eliminate the need for a substantive evaluation.

**7.** It could fairly be said that every bidder at an auction wants to minimize the sale proceeds and purchase as cheaply as possible. However, in most instances, there are sufficient bidders in the market to ensure that the auction price will approximate the true value of the asset. The sale of Defensive Appellate Rights could be subject to a substantial market imperfection.