FILED

JUL 15 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-15-1151-FKiKu |
| ) | |
| MOISEY FRIDMAN and ) | Bk. No.   8:12-bk-11721-ES |
| ROSA FRIDMAN, ) | |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| MOISEY FRIDMAN; ROSA FRIDMAN, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| KARL T. ANDERSON, Chapter 7 ) | |
| Trustee; KARL AVETOOM, ) | |
| ) | |
| Appellees. ) | |
| _____) | |

Argued and Submitted on June 23, 2016
at Pasadena, California

Filed – July 15, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Erithe A. Smith, Bankruptcy Judge, Presiding

_____

Appearances:     Appellant Rosa Fridman argued pro se; Juliet Y. Oh
argued for Appellee Karl T. Anderson, Chapter 7
Trustee; Appellee Karl Avetoom argued pro se.

_____

Before: FARIS, KIRSCHER, and KURTZ, Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, see Fed. R. App. P. 32.1, it has no precedential value, see
9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Appellants/chapter 7[1] debtors Moisey and Rosa Fridman appeal the bankruptcy court's order approving the sale of their right to appeal an adverse state court judgment in favor of Appellee Karl Avetoom. We hold that the court did not abuse its discretion in approving the sale. Accordingly, we AFFIRM.

**FACTUAL BACKGROUND**[2]

The Fridmans and Mr. Avetoom are former neighbors at Beach Crest Villas, where Mr. Avetoom is the president of the Beach Crest Villas Homeowners Association ("HOA"). This appeal arises from a long and contentious history of litigation between the Fridmans and Mr. Avetoom, most of which is not relevant to this case and need not be recounted here.

**A.   State court judgment and appeal**

In November 2011, following a jury trial in California superior court, Mr. Avetoom obtained a state court judgment against the Fridmans for, among other things, intentional infliction of emotional distress. The jury awarded Mr. Avetoom non-economic damages totaling $600,000 and punitive damages totaling $400,000. The punitive damages award was later reduced to $50,000.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

[2] The Fridmans present us with a limited record. We have exercised our discretion to review the bankruptcy court's docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

2

After the superior court denied the Fridmans' motion for new trial and a motion for judgment notwithstanding the verdict, the Fridmans appealed.

**B.    Bankruptcy proceedings**

While the appeal was pending, the Fridmans filed for chapter 13 bankruptcy. They converted their case to chapter 7, and appellee Karl Anderson ("Trustee") was appointed as chapter 7 trustee (apparently after an election).

According to the Fridmans' schedules, they have general unsecured debts totaling approximately $60,245.76. Their only other debts are the $650,000 judgment and a $119,000 equity line of credit.

The Trustee made several attempts to extricate the estate from the litigation and appeal. First, he filed a motion for authority to sell the estate's rights to pursue the Fridmans' appeal to Mr. Avetoom for $25,000, subject to overbid. The Fridmans complained that they could not afford to bid and would oppose any such sale. The United States Trustee also expressed concern that the proposed sale might be tantamount to an impermissible waiver of discharge in violation of § 524(c).[3] As

---

[3] Debts for "willful and malicious injury" are not dischargeable in bankruptcy under § 523(a)(6). A prebankruptcy judgment that includes punitive damages can sometimes establish, under issue preclusion principles, that the debtor's conduct was "willful and malicious." See, e.g., Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 831-32 (9th Cir. BAP 2006), aff'd, 506 F.3d 956 (9th Cir. 2007) (holding that "it was permissible for the court to apply issue preclusion to establish willful and malicious injury for purposes of § 523(a)(6)"). The sale (and extinguishment) of the Fridmans' appellate rights thus could have saddled them with a nondischargeable debt.

3

a result, the Trustee withdrew the motion.

The Trustee then attempted to transfer the appeal rights to the Fridmans. The Trustee filed a motion for approval of a compromise with the Fridmans ("Compromise Motion"). He sought authority to abandon the appeal rights and to allow the Fridmans to prosecute the appeal at their own expense. They were required to recover and return to the estate certain funds that they had paid to their prebankruptcy lawyers.

While the Compromise Motion was pending, the Trustee commenced an adversary proceeding against the Fridmans, seeking a denial of discharge under § 727.

At the hearing on the Compromise Motion, the court found that the Trustee had the power to sell the right to appeal because it was property of the Fridmans' estate, but ordered that the Compromise Motion be taken off calendar pending the resolution of the adversary proceeding. The court also ordered the state court appeal stayed.

Just prior to trial in the § 727 adversary proceeding, the Fridmans stipulated to the entry of judgment denying their discharge.

**C.   Sale of the appeal rights**

The Trustee did not renew the Compromise Motion after the § 727 adversary proceeding was concluded. Instead, the Trustee filed a motion seeking authority to sell the appeal rights to Mr. Avetoom and the HOA, subject to overbid ("Sale Motion").

The Sale Motion drew opposition from two parties. First, the Fridmans argued that the sale of the right to appeal was improper and that the overbid procedures were unfair. They

4

argued that Mr. Avetoom was engaging in "threatening, unethical, and malicious behavior" to prevent an appeal of the state court judgment. They also claimed that the Trustee had already agreed to abandon the appeal rights to them. Second, the law firm of Darling & Risbrough, LLP, which had formerly represented the Fridmans, objected to the inclusion of the HOA as one of the proposed buyers, contending that the HOA lacked power to make such a purchase.

In his reply brief, the Trustee represented that the HOA agreed not to participate as a buyer. Mr. Avetoom agreed to purchase the right to appeal with his own monies.

The court issued a tentative ruling indicating that it was inclined to grant the Sale Motion. At the hearing,[4] the Trustee conducted an auction of the right to appeal pursuant to the overbid procedures. The Fridmans were present, but only Mr. Avetoom and the Darling & Risbrough law firm participated in the auction. Mr. Avetoom eventually won the right to appeal with a purchase price of $37,000. Following the auction, the court granted the Sale Motion.

**D. BAP appeal and post-appeal events**

The court entered a written order approving the sale (the "Sale Order"), which was a short, counsel-prepared order that incorporated the court's tentative ruling. The Fridmans had already filed a premature notice of appeal. They did not obtain

[4] The Fridmans did not include in their excerpts of record a transcript of the hearing on the Sale Motion. They represented that they did not have the financial resources to order the transcript and asked for the Panel's understanding.

5

a stay of the Sale Order.

Shortly thereafter, the state appellate court dismissed the Fridmans' state court appeal at Mr. Avetoom's request (since he then owned the appeal rights).

After filing the opening brief in this appeal, Mr. Fridman passed away. A California state court appointed the Fridmans' son Val Fridman as personal representative of Mr. Fridman's estate.

Appellees filed a motion to dismiss the appeal as moot. They argued that, because the Fridmans did not seek a stay of the Sale Order and the state court appeal has been dismissed, the present appeal is moot. The motions panel denied the motion, subject to final decision by the merits panel.[5]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(N) and (O). Subject to our discussion of mootness below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether this appeal is moot.

(2) Whether a right to appeal is an estate asset that may be sold by auction.

(3) Whether the bankruptcy court erred in approving the sale of the Fridmans' right to appeal the state court judgment.

(4) Whether the HOA is a bona fide creditor that may

---

[5] Because they are relevant to the question of mootness and Val Fridman's appointment as personal representative, we will take judicial notice of exhibits 3, 4, and 5 to docket 17; exhibits 1, 2, and 3 to docket 54; docket 69; and docket 70. All other requests for judicial notice are DENIED.

6

participate in the bankruptcy case.

(5) Whether the sale is subject to scrutiny by the Department of Homeland Security ("DHS").

## STANDARDS OF REVIEW

We review de novo our own jurisdiction, including questions of mootness. Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs), 339 F.3d 782, 787 (9th Cir. 2003). "De novo review requires that we consider a matter anew, as if no decision had been made previously." Francis v. Wallace (In re Francis), 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

The question whether a purchaser is a good faith purchaser under § 363(m) is a question of fact that we review for clear error. Thomas v. Namba (In re Thomas), 287 B.R. 782, 785 (9th Cir. BAP 2002).

We review for abuse of discretion an order approving a § 363 sale. Moldo v. Clark (In re Clark), 266 B.R. 163, 168 (9th Cir. BAP 2001). Similarly, the bankruptcy court's decision to approve a compromise under Rule 9019 is reviewed for abuse of discretion. Martin v. Kane (In re A&C Props.), 784 F.2d 1377, 1380 (9th Cir. 1986).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." United States v.

7

Hinkson, 585 F.3d 1247, 1262–63 & n.21 (9th Cir. 2009) (en banc). "If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion." USAA Fed. Sav. Bank v. Thacker (In re Taylor), 599 F.3d 880, 887–88 (9th Cir. 2010) (citing Hinkson, 585 F.3d at 1261–62).

## DISCUSSION

**A. This appeal is not moot.**

Appellees urge us to hold that this appeal is moot, because the Fridmans did not obtain a stay of the Sale Order and the state court appeal has been dismissed. We discuss two alternate mootness grounds: statutory mootness and equitable mootness.

**1. Statutory mootness**

The "safe harbor" provision of § 363(m) states:

> The reversal or modification on appeal . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property **in good faith**, whether or not such entity knew of the pendency of the appeal, **unless such authorization and such sale or lease were stayed pending appeal.**

§ 363(m) (emphases added).

With respect to an appeal of a sale of assets in bankruptcy, the Ninth Circuit has stated: "[W]hen, in the absence of a stay of the order of sale, a sale to a 'good faith purchaser' has been concluded, an appellate court cannot undo the sale. Because the court cannot provide meaningful relief to the appellant under those circumstances, any appeal of the order of sale thereby becomes moot." Dunlavey v. Ariz. Title Ins. & Tr. Co.

8

(In re Charlton), 708 F.2d 1449, 1454 (9th Cir. 1983) (quoting Taylor v. Lake (In re CADA Invs., Inc.), 664 F.2d 1158, 1160 (9th Cir. 1981)).

However, "[e]ven though an appeal from an order approving a sale is moot if the sale has not been stayed and is consummated, there are several exceptions. One exception to the mootness rule is for appeals questioning whether the purchaser purchased the property in good faith." Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald), 428 B.R. 872, 880 (9th Cir. BAP 2010) (citing Sw. Prods., Inc. v. Durkin (In re Sw. Prods., Inc.), 144 B.R. 100, 102-03 (9th Cir. BAP 1992)); see Onouli-Kona Land Co. v. Richards (In re Onouli-Kona Land Co.), 846 F.2d 1170, 1173 (9th Cir. 1988) ("Bankruptcy's mootness rule operates only when a purchaser bought an asset in good faith.").

In the present case, it is undisputed that the Fridmans did not seek a stay of the Sale Order and that the state court appeal has been dismissed. The question, then, is whether Mr. Avetoom is a "good faith" purchaser entitled to the protections of § 363(m).

A good faith purchaser is "one who buys 'in good faith' and 'for value.'" Ewell v. Diebert (In re Ewell), 958 F.2d 276, 281 (9th Cir. 1992). The Ninth Circuit has "defined lack of good faith as 'fraud, collusion . . . or an attempt to take grossly unfair advantage of other bidders.'" In re Onouli-Kona Land Co., 846 F.2d at 1173 (quoting Cmty. Thrift & Loan v. Suchy (In re Suchy), 786 F.2d 900, 902 (9th Cir. 1985)).

"'Good faith' is a factual determination to be reviewed for clear error . . . ." In re Thomas, 287 B.R. at 785. The

9

bankruptcy court's factual finding must be supported by evidence in the record. In re Fitzgerald, 428 B.R. at 880-81. An appellate court will look past a "boilerplate 'good faith' finding" and ascertain whether the finding has "an evidentiary foundation." Id. at 881. "[P]arties who desire the protection of section 363(m) [must] establish an evidentiary record for the bankruptcy court to make the necessary findings of fact and conclusions of law." T.C. Inv'rs v. Joseph (In re M Capital Corp.), 290 B.R. 743, 745 (9th Cir. BAP 2003); see In re Fitzgerald, 428 B.R. at 881 ("The boilerplate 'good faith' finding in the Sale Order does not suffice under section 363(m), and the bankruptcy court should not have signed such an order without an evidentiary foundation.").

The BAP will not make a finding of good faith (or the lack thereof) in the first instance on appeal, because "determination of section 363(m) good faith is the province of the trial court." In re M Capital Corp., 290 B.R. at 747; see id. at 752 ("Without such affirmative findings, the ramifications should be obvious: no safe harbor[.]").

Here, the bankruptcy court made a finding of good faith in the Sale Order: "The Purchaser is a 'good faith' purchaser of the Appeal Rights within the meaning of 11 U.S.C. § 363(m)." The court's tentative ruling covered the elements of "good faith" under the Ninth Circuit standard: "There is no evidence of any fraud or collusion between the purchaser, Avetoom, and the court finds that the transaction was negotiated and proposed in good faith." The court may have said more on this topic on the record at the hearing on the Sale Motion, but the Trustee and

10

Mr. Avetoom have not provided us with a copy of the hearing transcript.

The bankruptcy court's finding has evidentiary support in the record. Cf. In re Fitzgerald, 428 B.R. at 880 ("we see absolutely no evidence in the record to support a 'good faith' finding under section 363(m)"). The Trustee offered evidence that: the Trustee and Mr. Avetoom negotiated the proposed sale at arm's length and in good faith; there had been no fraud and collusion; the Trustee sought competitive bids for the appeal rights; and the Trustee had taken steps to obtain the highest price possible. As such, we discern no clear error in the bankruptcy court's finding of good faith.

We make this determination with some unease. The amount of energy which the parties have devoted to this litigation, and the extraordinary degree of venom they have poured on each other, make it clear that this case is more of a personal vendetta than a rational attempt by the parties to protect their legitimate interests. To say that either of these parties is acting in "good faith" stretches the common meaning of that phrase to the breaking point. But the case law ascribes a special meaning to the phrase in the context of § 363(m). Given that definition, we cannot say that the bankruptcy court erred.

But all of this assumes that § 363(m) applies. We have repeatedly held that a transaction presented as a settlement of litigation often must be analyzed both as a settlement under Rule 9019 and as a sale under § 363(m). See Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.), 292 B.R. 415, 421 (9th Cir. BAP 2003). The converse is

11

also true: a transaction presented as a sale that is in substance a settlement under Rule 9019 must be analyzed under both provisions. See In re Lahijani, 325 B.R. at 290; In re Fitzgerald, 428 B.R. at 884.

The hybrid nature of the motion is important here because, while § 363(m) applies to sales, no comparable provision applies to settlements under Rule 9019. Further, applying § 363(m) to settlements would not further that subsection's purpose. Section 363(m) is intended to increase the confidence of purchasers in bankruptcy sales and then encourage them to buy estate assets for higher prices. See In re Ernst Home Ctr., Inc., 209 B.R. 974, 986 (Bankr. W.D. Wash. 1997) ("The intent of Section 363(m) is to encourage third parties to do business with a debtor in possession, by providing certainty and finality to a transaction where consideration is paid in good faith to the estate by that third party."). This purpose is not directly related to settlements.

We therefore conclude that this appeal is not statutorily moot under § 363(m).

### 2. Equitable mootness

Equitable mootness requires "that practical and equitable factors should be taken into consideration in determining if an appeal is moot." Twenty-Nine Palms Enters. Corp. v. Bardos (In re Bardos), BAP No. CC-13-1316, 2014 WL 3703923, at *6 (9th Cir. BAP July 25, 2014). Equitable mootness arises when "appellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court, thus 'permitting such a comprehensive

12

change of circumstances to occur as to render it inequitable . . . to consider the merits of the appeal." Id. (quoting Focus Media, Inc. v. NBC (In re Focus Media, Inc.), 378 F.3d 916, 922 (9th Cir. 2004)). The party asserting equitable mootness must "demonstrate that the case involves transactions 'so complex or difficult to unwind' that equitable mootness applies." Id. at *7 (quoting Lowenschuss v. Selnick (In re Lowenschuss), 170 F.3d 923, 933 (9th Cir. 1999)). "Equitable mootness requires the court to look beyond impossibility of a remedy to 'the consequences of the remedy and the number of third parties who have changed their position in reliance on the order that is being appealed.'" Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 33 (9th Cir. BAP 2008) (quoting Darby v. Zimmerman (In re Popp), 323 B.R. 260, 271 (9th Cir. BAP 2005)).

The Trustee argues that this appeal is equitably moot, because the state appellate court dismissed the appeal, and that order is final and non-appealable. Mr. Avetoom adds that other litigation has been dismissed because the appeal has been dismissed.

While perhaps unlikely, it may not be impossible for the Fridmans to obtain effective relief if we were to reverse. We cannot rule out the possibility that the California appellate courts might exercise their inherent powers[6] to set aside the

---

[6] The California state courts have broad inherent powers to effect justice. See, e.g., Clark v. First Union Sec., Inc., 153 Cal. App. 4th 1595, 1608 (2007) ("All courts have inherent powers that enable them to carry out their duties and ensure the (continued...)

13

dismissal of the appeal if we were to rule that the bankruptcy court should not have put Mr. Avetoom in control of the appeal rights. Similarly, Mr. Avetoom does not give us enough information about the other dismissed litigation to persuade us that the transaction cannot be unwound.

Moreover, the HOA is the only third party affected by this case. But because the HOA was a party to the underlying litigation, the HOA is not the type of third party that the equitable mootness doctrine was meant to shield. See Bardos v. Gladstone (In re Bardos), BAP No. CC-15-1217-FDKu, 2016 WL 1161225, at *6 (9th Cir. BAP Mar. 23, 2016) ("While it is true that Twenty-Nine Palms is not a party to this appeal, it is the largest creditor and a participant in both the Individual Case and the Corporate Case. Accordingly, we cannot say that Twenty-Nine Palms is the type of third party that equitable mootness is meant to protect."). Also, there is no indication that the HOA or other third parties have changed their positions in reliance on the Sale Order.

Thus, the appeal is not equitably moot.

**B.** **The Fridmans' right to appeal the adverse state court judgment is property of their bankruptcy estate that the Trustee can sell or compromise.**

The Fridmans argue that the Trustee had no power to sell the right to appeal. Essentially, they contend that, because the sale of the right to appeal to Mr. Avetoom forecloses the

---

[6](...continued)
orderly administration of justice. The inherent powers of courts are derived from California Constitution, article VI, section 1, and are not dependent on statute.").

14

possibility of reversing the state court judgment, the sale is improper and against their "Constitutional right" of appeal. We disagree.

The right to appeal a state court judgment is property that is part of a debtor's estate. See, e.g., McCarthy v. Goldman (In re McCarthy), BAP No. CC-07-1083-MoPaD, 2008 WL 8448338, at *16 (9th Cir. BAP Feb. 19, 2008) (implicitly agreeing with the bankruptcy court that the debtor's "Appeal Rights are property of the estate"); In re Marciano, No. 1:11-BK-10426-VK, 2012 WL 4369743, at *1 (C.D. Cal. Sept. 25, 2012) (under California law, the right to appeal an adverse judgment is a property right); Mozer v. Goldman (In re Mozer), 302 B.R. 892, 896 (C.D. Cal. 2003) ("all of the Debtors' appellate rights, including the Defensive Appellate Rights, are saleable by the Trustee").

The Fridmans fail to provide any legal authority in support of their position. Rather, as discussed above, a right to appeal may be sold as part of estate assets, even to the party against whom the appeal is directed. See In re Mozer, 302 B.R. at 896. The fact that Mr. Avetoom purchased the appeal rights to foreclose an appeal of the state court judgment in his favor is not out of the ordinary or otherwise improper.

The Fridmans also argue that the Trustee could not sell the appeal rights to Mr. Avetoom, because he had already sold those rights to them. The Fridmans misapprehend the bankruptcy process. While it is true that the Trustee initially entered into an agreement with the Fridmans to abandon the appeal rights, the Trustee had no power to abandon or sell the appeal rights to anyone absent court approval, and the bankruptcy court never

15

approved the abandonment to the Fridmans.

The Fridmans complain that the Trustee kept part of the funds he received pursuant to the compromise, even though the court never approved the compromise and the Trustee did not carry out his end of the deal. The record on this issue is opaque, but the Trustee apparently handled the funds in accordance with the bankruptcy court's orders that no one appealed. In any event, the only issue before us is whether the court erred in approving the transaction with Mr. Avetoom.

Therefore, the right to appeal was property of the bankruptcy estate that the Trustee could choose to sell or auction.

**C. The bankruptcy court did not abuse its discretion in granting the Sale Motion.**

The Fridmans contend that the sale of the appeal rights to Mr. Avetoom was improper for a number of reasons. Although the Fridmans do not state a legal basis for their position, we consider whether the Sale Order was proper under § 363 and Rule 9019.

**1. The sale was proper under § 363(b)(1).**

Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." § 363(b)(1). "The trustee (and, ultimately, the bankruptcy court) must assure that the estate receives optimal value as to the asset to be sold." DeBilio v. Golden (In re DeBilio), BAP No. CC-13-1441-TaPaKi, 2014 WL 4476585, at *6 (9th Cir. BAP Sept. 11, 2014) (citing § 363(b)(1); Simantob v. Claims

16

Prosecutor, LLC (In re Lahijani), 325 B.R. 282, 288-89 (9th Cir. BAP 2005)). "Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection. Nevertheless, particularly in the face of opposition by creditors, the requirement of court approval means that the responsibility ultimately is the court's." In re Lahijani, 325 B.R. at 289. We also stated that, "[i]n the Ninth Circuit, a § 363(b)(1) sale does not require a good faith finding." Id. (citing In re Thomas, 287 B.R. at 785 ("While no bankruptcy judge is likely to approve a sale that does not appear to be in 'good faith,' an actual finding of 'good faith' is not an essential element for approval of a sale under § 363(b).")).

In its tentative ruling (incorporated in the Sale Order), the court held:

> The trustee has exercised sound business judgment in pursuing the sale of the Appeal Rights. The proposed sale will generate funds in the amount of $25,000 for the benefit of the bankruptcy estate. The alternative, prosecuting the appeal, would result in the incurring of additional attorneys fees and, best case scenario, a reduction of Avatoom's [sic] claim against the estate. Given the nature of the asset, the proposed sale is fair and reasonable.
>
> There is no evidence of any fraud or collusion between the purchaser, Avatoom [sic], and the court finds that the transaction was negotiated and proposed in good faith. Further, the trustee and the trustee [sic] has sought competitive bids for the Appeal Rights from those most interested -- Debtors and the Darline [sic] & Risbrough law firm but neither has expressed an intent to submit an overbid. In this regard, the court also finds that the proposed overbid procedure (starting at $26,000 with subsequent overbids in increments of $1000) to be reasonable. As the trustee has a duty to maximize the liquidation of assets of the estate, it follows that no limit should be placed on the purchase price.

17

The court properly determined that: (1) the sale had a sound business purpose of bringing money into the estate; (2) the sale was in the best interest of the estate, because the sale price was fair and reasonable, and it would bring in $25,000 or more and avoid the cost and uncertainty of further litigation; (3) the Trustee marketed the asset and sought competitive bids from the Fridmans and Darling & Risbrough; and (4) the sale was proposed and made in good faith, because there was no fraud or collusion. We find no error in the court's ruling.

The Fridmans allege that Mr. Avetoom was allowed to select the chapter 7 trustee overseeing his case; there was "collusion between Mr. Avetoom and Trustee Anderson, but nobody listened, and if they did, no one cared enough to stop it"; the Trustee was self-interested and was only concerned about his commission; and it was improper for Mr. Avetoom to overbid. The Fridmans provide no support for these allegations,[7] and we find no basis in the record for any of them.

The Fridmans also argue that good faith requires an "identifiable purchaser" who gives "value." They contend that Mr. Avetoom cannot be an "identifiable purchaser" because he "said he got the money from several different generous sources, presumably 'people,' but never disclosed their identities[,]" which "reeks of a sham transaction, or raises questions of the involvement of money that has potentially been laundered." The

[7] The record suggests that the Trustee was elected under § 702. This may be the basis for the Fridmans' argument that Mr. Avetoom chose the Trustee (since Mr. Avetoom is the largest creditor). But there is nothing improper about the election of a trustee.

18

Fridmans again have no legal authority for the proposition that a purchaser in a bankruptcy sale must always identify the purchaser's funding sources. Nor have they offered any evidence that Mr. Avetoom got any of the money from a tainted source.

They also argue that Mr. Avetoom could not have given "value." They say that value "has yet to be determined, because the value of the appeal is only realized once it is heard." They assert that the Trustee did not consider the real value of the right to appeal, which ranged from $1,000,000 (the original judgment) to $720,000 (the purported value of their home) to $375,000 (the "discounted sale price") to "priceless" (the value of their "vindication"). The Fridmans fail to recognize another possibility: the appellate court might reject the appeal, in which case the appeal rights were worthless. In any event, the Fridmans' argument leads to the absurd conclusion that a trustee cannot settle an appeal, or sell the estate's right to appeal, until after the appeal has concluded. The bankruptcy court did not err when it found that the Trustee properly exercised his business judgment in selling those rights to the highest bidder for $37,000.

We thus hold that the court did not abuse its discretion in holding that the sale was proper under § 363(b)(1).

### 2. Viewing the transaction as a compromise under Rule 9019, the bankruptcy court did not err.

Our inquiry does not end with § 363(b)(1). Fitzgerald and Lahijani both considered the sale of litigation claims to a person against whom those claims might be asserted. Both decisions rest on the common-sense proposition that a "sale" of

19

claims to a defendant has the same effect as a settlement of those claims, and vice versa, so such transactions should be evaluated both as sales and as settlements.  See In re Lahijani, 325 B.R. at 290; In re Fitzgerald, 428 B.R. at 884 ("The bankruptcy court erred when it issued the Sale Order without performing the analysis required by the case law regarding compromises under Rule 9019.").

Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct."  Rule 9019(a).

"The bankruptcy court has great latitude in approving compromise agreements."  Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988) (citing In re A&C Props., 784 F.2d at 1380-81).

> It is clear that there must be more than a mere good faith negotiation of a settlement by the trustee in order for the bankruptcy court to affirm a compromise agreement.  The court must also find that the compromise is fair and equitable.  See, e.g., Citibank, N.A. v. Baer, 651 F.2d 1341, 1345-46 (10th Cir. 1980).
>
> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:
>
> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In re A&C Props., 784 F.2d at 1381 (citation omitted).  The Ninth Circuit has also stated that "[t]he trustee, as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved."  Id. (citing In re Hallet, 33 B.R. 564, 565-66 (Bankr. D. Me. 1983)).

The law favors compromise, "and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed.  Thus, on review, we must determine whether the settlement entered into by the trustee was reasonable, given the particular circumstances of the case."  Id. (internal citations omitted).

Moreover, "'[w]hen assessing a compromise, courts need not rule upon disputed facts and questions of law, but only canvass the issues.'  If the court were required to do more than canvass the issue, 'there would be no point in compromising; the parties might as well go ahead and try the case.'"  Suter v. Goedert, 396 B.R. 535, 548 (D. Nev. 2008) (citations omitted).

In the present case, the bankruptcy court acknowledged that the sale may be subject to Rule 9019.  Neither the tentative ruling nor the counsel-prepared Sale Order indicates that the bankruptcy court engaged in the analysis required by A&C Properties.  But we cannot conclusively say that the court did not consider Rule 9019 and make appropriate findings at the hearing.  We cannot review the oral ruling because the Fridmans have not provided us with the hearing transcript.

Without the benefit of the hearing transcript, we are unable

21

to discern (1) whether the bankruptcy court identified the proper legal standard and (2) whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." Hinkson, 585 F.3d at 1261–62.

It is the Fridmans' duty to provide the Panel with a complete record on appeal. See Welther v. Donell (In re Oakmore Ranch Mgmt.), 337 B.R. 222, 226 (9th Cir. BAP 2006) (the appellant "bears the burden of presenting a complete record") (citing Kritt v. Kritt (In re Kritt), 190 B.R. 382, 387 (9th Cir. BAP 1995)). "The settled rule on transcripts in particular is that failure to provide a sufficient transcript may, but need not, result in dismissal or summary affirmance and that the appellate court has discretion to disregard the defect and decide the appeal on the merits." Kyle v. Dye (In re Kyle), 317 B.R. 390, 393 (9th Cir. BAP 2004), aff'd, 170 F. App'x 457 (9th Cir. 2006) (citations omitted). But see Ehrenberg v. Cal. State Univ. (In re Beachport Entm't), 396 F.3d 1083, 1087 (9th Cir. 2005) ("Although summary dismissal is within the BAP's discretion, it 'should first consider whether informed review is possible in light of what record has been provided.'").

Even if the court did not articulate an analysis of the A&C Properties factors, we may affirm on any ground supported by the record. See California ex. rel. Cal. Corps. Comm'r v. Yun (In re Yun), 476 B.R. 243, 251 (9th Cir. BAP 2012). There is no doubt that the record supports a determination that the test is satisfied. Therefore, we find no error concerning the application of Rule 9019.

22

**D.    The Fridmans' argument that the HOA is not a bona fide creditor is untimely and irrelevant.**

Next, the Fridmans argue that the court erred, because the HOA was not a bona fide creditor under 28 U.S.C. § 1359. We perceive no error.

28 U.S.C. § 1359 (incorrectly cited by the Fridmans as 23 U.S.C. § 1359) states: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." Although the Fridmans invoke this section, they fail to explain how it is relevant to this appeal or how the HOA was "improperly or collusively made or joined" in the bankruptcy court litigation. Their bottom-line argument appears to be that, because the HOA is colluding with Mr. Avetoom, it was an error to sell the appeal rights to Mr. Avetoom.

The Fridmans did not raise this argument before the bankruptcy court and have waived this argument for the purposes of appeal. See Yamada v. Nobel Biocare Holding AG, No. 14-55263, --- F.3d ----, 2016 WL 3207650, at *5 (9th Cir. Apr. 20, 2016) ("[g]enerally, an appellate court will not hear an issue raised for the first time on appeal"); Ezra v. Seror (In re Ezra), 537 B.R. 924, 932 (9th Cir. BAP 2015) ("Ordinarily, federal appellate courts will not consider issues not properly raised in the trial courts."). No exceptional circumstances warrant our review of these issues in the first instance on appeal. See In re Ezra, 537 B.R. at 932.

Moreover, the Fridmans incorrectly argue that only creditors

23

can bid in a bankruptcy sale. The Trustee is tasked with realizing the greatest profit when selling estate assets, and limiting sales only to creditors would not serve this purpose. Further, the HOA ultimately did not bid.

Accordingly, the Fridmans waived their argument concerning the HOA's standing as a creditor, and, in any event, the argument is unpersuasive.

**E.    The Fridmans' argument that the sale is subject to DHS jurisdiction is untimely and irrelevant.**

Finally, the Fridmans contend that the funds that Mr. Avetoom used to purchase the right to appeal are of suspect origin and should have been scrutinized by the DHS. Again, we discern no error.

The Fridmans did not raise this argument before the bankruptcy court, and we deem it waived on appeal. See id.

Even if we were to consider the merits of the Fridmans' argument, they do not identify any error. The Fridmans offer no evidence that Mr. Avetoom's funds are from some nefarious source. They do not provide any authority for their assertion that all transactions of more than $5,000 are subject to DHS review.

Nor do we find any merit in the Fridmans' implication that the Trustee behaved improperly or abused his position.

Accordingly, we reject this unsupported argument.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order approving the sale of the Fridmans' appeal rights to Mr. Avetoom.

24